Argued June 2, affirmed July 21, 1914.

## DUNCAN v. DRYER, MAYOR.

(143 Pac. 644.)

**Municipal Corporations—Enactment of Charter—Initiative and Referendum.**

1. Article XI, Section 2 of the Constitution, granting to the legal voters of every city and town power to enact and amend their charters, subject to the Constitution and criminal laws of the state, and Article IV, Section 1a, reserving to the legal voters of every municipality the initiative and referendum powers as to local, special, and municipal legislation, to be exercised according to general laws, except that cities and towns may provide the manner of exercising these powers as to municipal legislation, having been adopted at the same time, are to be construed together.

**Municipal Corporations—Enactment of Charter—Initiative and Referendum.**

2. Under Article IV, Section 1a of the Constitution, authorizing cities and towns to provide for the manner of exercising the initiative and referendum as to municipal legislation, they have power to provide the manner of enacting new charters.

**Municipal Corporations—Enactment of Charter—Initiative and Referendum.**

3. An ordinance which shows by its title and emergency clause an intention to provide the mode of exercising the initiative and referendum in enacting a new charter, though the body of the ordinance provides only for charter amendments, is sufficient to authorize the enactment of a new charter, especially since Laws of 1907, page 398, under which the proceedings would be had in absence of the ordinance, itself fails to provide for adoption of a charter as distinguished from an amendment to the charter.

**Municipal Corporations—Ordinances—Construction.**

4. The rules for construing statutes usually apply to the construction of city ordinances.

From Umatilla: GILBERT W. PHELPS, Judge.

This is a suit in equity by H. T. Duncan, C. G. Brownell and J. A. Stanfield against H. N. Dryer, Mayor of the City of Umatilla, J. H. Cherry, H. E. Hatter, F. W. Cline, H. Oftedal, A. G. Means and R. I. Yerxa, as councilmen of the City of Umatilla, a municipal corporation, and H. B. Hull, recorder of the City of Umatilla, for an injunction restraining said officers from executing or delivering certain municipal bonds.

From a decree dismissing the suit, after overruling a demurrer to the answer, plaintiffs appeal. The facts are set forth in the opinion of the court.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Charles E. Cochran, Mr. Arthur C. Spencer* and *Messrs. Carter & Smythe,* with an oral argument by *Mr. Cochran.*

For respondents there was a brief over the names of *Mr. W. A. Johnson, Mr. J. T. Hinkle* and *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Johnson.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit to enjoin the defendants, as officers of the City of Umatilla, from receiving or accepting expected proposals for the purchase of the bonds referred to in the complaint, and from executing or delivering any of said bonds, etc. The plaintiffs are residents and taxpayers of the City of Umatilla, and they brought this suit for themselves as taxpayers, and in behalf of all other taxpayers similarly situated, who desire to join therein and contribute to the expense thereof. The City of Umatilla was incorporated under the general laws of this state, relating to the incorporation of towns and villages having not less than 150 inhabitants: See §§ 3206, 3207, L. O. L. The defendants are the officers of said city, and have been sued in their official capacities. It is not necessary to set out or summarize all of the pleading. Prior to the 16th day of February, 1914, the town of Umatilla was a body corporate exercising municipal functions. During the fall of 1913, the common council of that city

began the consideration of the adoption of a new charter for the government of the municipality. This charter was written and submitted to the council for their inspection and approval, and certain proceedings were had by the council, whereby the question of the adoption of the same was submitted to the legal voters of the municipality, at an election called for and held on the 16th day of February, 1914. This charter purports to authorize the council to issue the city's bonds in a sum not to exceed $20,000, par value, for the purpose of installing a waterworks system for the town, and to levy taxes upon all the property in the city, for the purpose of paying the principal and interest on said bonds. At said election, the voters of said city, by a majority vote, adopted said charter. The defendants answered, denying much of the complaint and setting up new matter, and the plaintiffs demurred to the new matter of the answer, for the following reasons:

"That such new matter does not constitute a defense to the plaintiffs' complaint; that it appears upon the face of said answer that, although cities and towns may provide for the manner of exercising the initiative powers as to municipal legislation, yet the City of Umatilla did not provide by ordinance No. 49, that new charters could be submitted to the people for their adoption or rejection, without initiative petition, and that sections 1 and 8 of ordinance No. 49 referred to in the new matter contained in said answer, are not an authorization of the submission to the legal voters of said municipality of the question of the adoption of a new charter, as contradistinguished from an amendment to the charter, and that, with respect to the adoption of a new charter by the legal voters of said city, the general laws of Oregon are still in force, and said answer shows upon its face, that the same have not been either directly or substantially complied with."

Said demurrer was overruled, and the plaintiffs, not desiring to reply, a decree was granted dismissing the case. The plaintiffs appeal, and contend that the court erred in overruling said demurrer, and in dismissing the suit, etc.

The question for decision is whether the new charter of the City of Umatilla that was adopted by a vote of the electors of said city, on February 16, 1914, was duly submitted to them for their approval. It was submitted to them, and a majority of the electors voted for its adoption, but the plaintiffs contend that it was not *duly* submitted. The point made by the plaintiffs is specially set out in said demurrer, and it appears to be that ordinance No. 49, passed by said city and set out at length in the answer, failed to provide the manner of submitting to the voters of said city for their adoption or rejection a *new charter* for said city, etc. The title of said ordinance is as follows:

"Ordinance No. 49.

"An ordinance to provide the carrying into effect in the City of Umatilla, Umatilla County, Oregon, the initiative and referendum powers reserved to the legal voters of municipalities by Section 1a of Article IV of the Constitution of the State of Oregon, and to enact and amend their municipal charters reserved to legal voters of cities and towns by Section 2 of Article XI of the Constitution of the State of Oregon, and providing for violation of this act, and declaring an emergency."

Said ordinance is lengthy, and based, to a large extent, upon the act of the legislative assembly of 1907, forming Chapter 226 of the Session Laws of 1907.

1. Article XI of Section 2 of the Constitution contains, *inter alia,* the following:

"The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

This provision does not provide *how* the power conferred thereby is to be exercised. This provision was adopted by the people of the state in 1906. At the same time, the people adopted Article IV, Section 1a of the Constitution, which contains, *inter alia,* the following:

"The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation."

These two constitutional provisions were adopted at the same time, and they should be construed together.

2. The provision last set out expressly provides that cities shall have the power to provide the manner of exercising the initiative and referendum powers, as to *their municipal legislation.*

It was held by the court in *Acme Dairy Co.* v. *Astoria,* 49 Or. 520 (90 Pac. 153), that amending municipal charters is, "municipal legislation" within the meaning of said provision of the Constitution, and that cities have the power to provide the manner of exercising the initiative power in the *amendment* of their charters. We approve this decision, and we hold, also, that cities have power to provide the manner of enacting new charters for their municipalities.

3. It will be seen by examining the title of said ordinance 49, *supra,* that it was intended by said ordinance to provide for carrying into effect in said city, by the voters thereof, of the power "to enact and amend" municipal charters. Section 17 of said ordinance declares an emergency for the taking effect of said ordinance from the date of its approval. Said section is as follows:

"Section 17. Whereas the present water supply of this city is unfit and insufficient to furnish the city and its inhabitants with a supply of good, pure and wholesome water; and whereas, in order to furnish the said city and its inhabitants therewith, it will be necessary to submit to the people of the city *a new charter,* containing provisions therefor, and authorizing the incurring of an indebtedness for said purpose; and whereas, this ordinance is enacted for the purpose of providing for said city a uniform system of procedure for use in said city in the manner of the exercise of the initiative and referendum powers; and whereas, it is necessary that *a new charter* be adopted in the manner provided by law at as early a date as possible, and in order properly so to do, it is necessary to enact this ordinance: Now, therefore, an emergency is hereby declared to exist, and this ordinance shall immediately go into effect upon and after its adoption and approval."

It is certain, from the title of said ordinance and from Section 17 thereof, that it was the intention of the council to provide by said ordinance a uniform system for the exercise, by said city, of the "initiative and referendum powers, *including the power to enact and amend charters,* and the reason for having said ordinance to take effect at once was declared to be, to enable said city, at as early a date as possible, to enact "*a new charter.*" Hence, it appears expressly, from the ordinance itself, that the chief reason for

passing said ordinance, was to enable said city to *enact a new charter* at as early a day as possible. We must therefore, in construing said ordinance, bear in mind this expressly declared intention of the council.

Section 1 of said ordinance prescribes a form for an initiative petition for any ordinance or *an amendment* to the charter, but it does not mention a *charter* as contradistinguished from an amendment of a charter.

Section 2 provides that the forms prescribed by said ordinance are not mandatory, and that it shall be sufficient to follow them substantially.

Section 7 declares that initiative petitions for any proposed ordinance, charter amendment *or measure* shall be signed by a number of legal voters equal to 15 per centum of the votes cast for mayor at the last preceding municipal election.

Section 8 provides that *an amendment* of the charter of Umatilla may be proposed and submitted to the legal voters thereof, by resolution of the common council, without an initiative petition, and that resolutions for submission of charter amendments are required to be filed with the recorder not later than 10 days before the election at which they are to be voted on. This section declares, also, that charter amendments shall not be effective until approved by a majority of the votes cast thereon, by the legal voters of said municipality.

This ordinance provides for the form of ballots, the giving of notice of elections, the manner of voting, the counting of votes, the publication of the result of the election by the mayor, etc. While this ordinance declares that *amendments* to the charter may be submitted to a vote of the electors, by a resolution of the common council, without an initiative petition, it does not expressly provide that a *charter* may be so sub-

mitted. In this instance, a charter for the city was submitted to a vote of the electors, by a resolution of the common council, without an initiative petition, and the electors adopted it.

Council for the plaintiffs contend that ordinance 49 makes no provision for submitting *a charter* without an initiative petition, and hence that the city should have proceeded under Chapter 226 of the Session Laws of 1907. This law is subject to some of the criticism that counsel for the plaintiffs has aimed at ordinance 49. Section 2 of said law sets forth a form of petition for the adoption of an ordinance or *amendment* to a city charter by the initiative, but it does not mention a *charter* as contradistinguished from an *amendment* of a city charter.

Section 12 of said law provides that if any ordinance, *charter* or amendment to the charter of any city shall be proposed by initiative petition, such petition shall be filed with the recorder, and that he shall transmit it to the next session of the city council, and that the council shall either ordain or reject the same. But nothing further is provided by said law as to what shall be done with a *charter* proposed by the initiative. We find no provision in the law of 1907 for submitting a *charter,* as contradistinguished from an amendment to a charter, to a vote of the electors of a city. Section 12 provides for submitting proposed ordinances *and amendments* to charters, to a vote of the electors, but the law is *silent* as to submitting a proposed *charter* to a vote of the people.

The law of 1907 provides for submitting to the electors of cities proposed *amendments* to city charters, either with or without initiative petitions; but we find no authority in said law for submitting to a vote of the electors any proposed *charter* **or** *new charter,* as

contradistinguished from amendments to charters. At the beginning of Section 12, the law mentions "*charter* or amendment to the charter," but in the other parts of said section only *amendment* or *amendments* to charters are named. Section 12 of said law of 1907 is Section 3482, L. O. L.

In the case of *Haines* v. *Forest Grove,* 54 Or. 446 (103 Pac. 775), the facts were that a *new charter* had been submitted to the council by initiative petition, in accordance with Section 12 of the law of 1907, that the council approved it and submitted it to a vote of the electors of the city, and that it was by them adopted. The court held, in that case, that the charter so adopted was valid. It was submitted to a vote of the people under said Section 12. As Section 12 does not in terms provide for submitting to a vote of the electors a complete charter as contradistinguished from *amendments* to charters, the court in that case may have concluded that the words "amendment" and "amendments" to city charters, as used in said Section 12, were used in a loose sense, as including, not only amendments properly so termed, but also, complete charters, or "new" charters.

It is obvious that ordinance 49, *supra,* was based upon the law of 1907, and that it uses the terms "charter," "new charter," and "amendments to the charter" very loosely, as including not only amendments properly so called, but also a complete charter.

As stated *supra,* it appears by Section 17 of said ordinance that one of the chief reasons for passing ordinance 49 was to enable the city to *adopt a new charter* as soon as possible, in order to include, in such charter, proper provisions for providing a good supply of wholesome water for said city. Inasmuch as one of the chief purposes in passing said ordinance was

thereby to enable the city to adopt *a new charter* as soon as possible, it seems incumbent on the courts so to construe said ordinance as to enable the city to carry out the purposes for which said ordinance was enacted, if that can be done in accordance with the law governing the construction of statutes and ordinances.

4. The rules for construing statutes usually apply to the construction of city ordinances: McQuillin, Ordinances, § 289. Volume 2 of Lewis' Sutherland, Statutory Construction (2 ed.), Section 376, states the rule for construing statutes thus:

"The mere literal construction of a section in a statute ought not to prevail, if it is opposed to the intention of the legislature, apparent by the statute; and if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words. Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. When general language, construed in a broad sense would lead to absurdity, it may be restrained."

In *State ex rel. M., St. P. & S. M. R. Co.* v. *Railroad Commission,* 137 Wis. 85 (117 N. W. 848), the court says:

"The actual judicially determined legislative intent must always govern, if expressed at° all, so as to be discernible by the searchlights which the court possesses. They permit of looking at a written law as a whole, to the subject with which it deals, to the reason and spirit thereof, to give words a broad or narrow construction, going either way to the limit of their reasonable scope, to supply omitted words which are

clearly in place by implication, to change one word for another, in case of the wrong one being clearly used, and so read out of the enactment the real intent, even though it may be contrary to the letter thereof.''

In *Hutchings* v. *Commercial Bank,* 91 Va. 73 (20 S. E. 952), the court says:

''The omission of the word 'not' at the point indicated makes the whole act incongruous and unintelligible, while, with that word incorporated, it is easily understood, clear, and makes the whole act harmonious. It is apparent that the omission was an inadvertence. *To adopt a literal construction of the act, as it stands, would lead to absurd results.* * * We appreciate the danger, and consequently the great caution to be exercised by courts, in construing the statutes, not to add to or take from them one jot or tittle, except in cases where the duty is plain, in order to give an intelligent effect to the statute, and thereby carry out the *manifest intent of the legislature.''*

In *Commonwealth* v. *Herald Pub. Co.,* 128 Ky. 432 (108 S. W. 894, 16 Ann. Cas. 761), the court says:

''This court has frequently inserted words in a statute, and has often modified expressions for the purposes of carrying out the legislative intent, *when it was apparent from a reading of a statute that the omission of words or their insertion in the wrong place was merely an error or omission.* * * Nor will this statute be held insufficient to punish violators of it. The omitted words necessary to perfect it will be supplied in accordance with the settled rules of statutory construction.''

In *Wong Sing.* v. *Independence,* 47 Or. 231 (83 Pac. 387), the syllabus is:

''Different sections of a statute must be read together to ascertain their full meaning, and sometimes words used in an earlier section *must be understood in a later section.* This illustrates the rule: When a city ordinance provides that no person shall sell liquor

in less quantities than a gallon without a license, and in a subsequent section further provides that anyone selling or disposing of any liquor without a license shall be punished, the words 'in less quantities than a gallon' are impliedly imported into the latter section" (by construction).

To hold that said ordinance No. 49 does not provide the manner of enacting a charter by the City of Umatilla would result in an absurdity, because the title of said ordinance and Section 17 thereof show expressly that one of the chief objects in passing said ordinance was to enable the city to enact a new charter as soon as possible, hence providing the manner of enacting a charter was within the *expressed intention* of the council in passing said ordinance. We will therefore construe said ordinance as if the words "a charter or" had been written in Sections 8 and 9, before the words "an amendment," and "amendment," wherever they occur in said sections. By supplying these words, by construction, we make the letter of the ordinance express the manifest intention of the council as shown by the ordinance itself. If the ordinance did not show on its face that it was intended to provide the manner of submitting *charters* as well as *amendments* to charters to the voters of the city, for adoption or rejection, we could not supply, by construction, the words stated *supra*. In thus supplying said words, we follow the case of *Wong Sing* v. *Independence,* 47 Or. 231 (83 Pac. 387), and the other authorities cited above.

The new charter is not before us, and we do not know what its provisions are, except the parts thereof set out in the complaint. It may be that it is in a sense an *amendment* of the old charter of the city. Section 17 of said ordinance 49 indicates that the charter was to be adopted to add provisions authorizing the city

to contract an indebtedness, to enable it to provide a supply of wholesome water. The former charter of said city was Sections 3206 to 3219, L. O. L.; said city having been organized under said sections. We find that the new charter of said city was duly submitted to the legal voters of said city for adoption or rejection, and that it was duly adopted by a majority vote of the electors of said city.

We find no error in the decree of the court below.

The decree of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.