Argued February 27, resubmitted in banc on record and briefs June 14, affirmed July 18, reconsideration denied August 30, petition for review denied November 28, 1978

GRAZIANO, *Appellant,*

*v.*

CITY COUNCIL OF CANBY et al, *Respondents.*

(No. 76-8-207, CA 9002)

581 P2d 552

Phil H. Ringle, Jr., Gladstone, argued the cause for appellant. With him on the briefs were Rodney J. Beck and Ringle & Herndon, P.C., Gladstone.

Wade P. Bettis, Canby, argued the cause for respondents. With him on the brief was Bettis & Reif, Canby.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a writ of review proceeding in which petitioner challenges his discharge from the position of chief of police by the respondent city council. Petitioner appeals from an order of the circuit court dismissing the writ, contending that he enjoyed tenure-type protection in his position, and thus should have been—but was not—afforded a due process hearing on the cause for his discharge. We conclude that this claim is not cognizable in a writ of review proceeding.

A writ of review can only be used to challenge the "judicial or quasi-judicial" decision of a tribunal. ORS 34.040. Decisions that are other than "judicial or quasi-judicial," such as legislative and administrative, can only be judicially reviewed by some other means, such as declaratory judgment, a suit in equity or an action at law. *See Joyce v. City of Portland,* 24 Or App 689, 546 P2d 1100 (1976); *Gunsolley v. Bushby,* 19 Or App 884, 529 P2d 950 (1974). The distinction rests upon whether a party seeks limited judicial appellate review of the record before the inferior tribunal, in which case his remedy is writ of review, or, instead, seeks the aid of a recordmaking and factfinding court, in which case his remedy is not writ of review. *See Fadeley v. Oregon Ethics Comm.,* 25 Or App 867, 551 P2d 496 (1976).

Although arising under the Administrative Procedures Act, ORS ch 183, *N.W. Envir. Def. v. Air Poll. Auth.,* 16 Or App 638, 519 P2d 1271 (1974), is analogous to the present case. There the claim was that an agency should have but did not hold a contested case hearing. Here the claim is that the city council should have but did not hold a quasi-judicial hearing. Contested case hearings before state agencies and quasi-judicial hearings before local tribunals are substantially equivalent. Claims that either should

have been held but was not must be presented originally to a recordmaking and factfinding court—the circuit court.

Although we conclude that petitioner has invoked the wrong remedy, we nevertheless reach one aspect of the merits because it presents a purely legal question and also in order to respond to the dissent. Petitioner contends he enjoyed tenure-type protection in his former position as chief of police. The relevant provision of the city charter provides:

> "There shall be appointed by the Council a Recorder, Municipal Judge, Attorney, Superintendent of Public Works, City Engineer, Chief of Police and Fire Chief, who shall be officers of this municipal corporation. The Council may combine any two or more appointive offices. The Council may designate an appointive officer to supervise any other appointive officer except the Municipal Judge in the exercise of his judicial functions. Appointed officers shall hold their office during the pleasure of the Council or until their successors are appointed and qualified. They are subject to removal at any time by the Council for malfeasance, inattention or incompetency. The Council may from time to time appoint such other subordinate officers as they deem necessary and proper, who shall hold their office at the will of the Council. The duties of all officers not defined in this Charter may be prescribed by the City Council." Charter for the City of Canby, ch III, § 9, pp 4-5 (January 2, 1969).

In arguing he enjoyed tenure as chief of police, petitioner relies on the sentence that states:

> "* * * [Appointed officers] are subject to removal * * * for malfeasance, inattention or incompetency * * *."

In arguing the chief of police is not a tenured position, respondent relies on the sentence that states:

> "* * * Appointed officers shall hold their office during the pleasure of the [City] Council * * *."

We must construe these provisions together and give effect to both. *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740 (1966); *Union Pac.*

*R. R. Co. v. Bean,* 167 Or 535, 549, 119 P2d 575 (1941). It is possible to give effect to both relevant sentences of the city charter by interpreting it to mean: Appointed officials hold office during the pleasure of the city council, and possible grounds for displeasure include, for example, malfeasance, inattention and incompetency.

This construction is most likely consistent with the draftsmen's intent. The city charter applies the same rule to seven appointive positions: city recorder, municipal judge, city attorney, superintendent of public works, city engineer, chief of police and fire chief. Many of these positions are involved in the formation and execution of political policies. Suppose the elected city council wants to make daytime residential burglaries the first police priority, but the appointed chief of police wants to make nighttime commercial burglaries the highest enforcement priority. Suppose the elected city council wants to repave Elm Street before repaving Maple Street, but the appointed superintendent of public works prefers to do those projects in the opposite order. We think it is reasonable to assume that the draftsmen of the city charter would have intended that the elected officials prevail over their appointed subordinates—even to the point of being able to discharge appointed bureaucrats for nothing more than an honest, good-faith disagreement over political policies.

Affirmed.

**JOSEPH, J.,** specially concurring.

The writ of review point is well taken. On the interpretation of the charter, I am not quite satisfied that the majority clearly states my view. The sentence "Appointed officers shall hold their office [*sic*] during the pleasure * * *" merely states the "term" of office, which is indefinite. The sentence "They are subject to removal * * *" merely (and redundantly) states what

can end "pleasure." In context "malfeasance" includes a failure to follow instructions, orders or policy.

I concur.

**THORNTON, J.,** dissenting.

The majority opinion concludes first that the petitioner chose the wrong remedy, *viz.,* writ of review, and second, that the defendant city council acted lawfully in dismissing petitioner.

I am unable to agree with either conclusion for the following reasons:

First, as I read ORS 34.040, the writ of review is clearly a cognizable remedy here under the facts and the express language of ORS 34.040 (as expanded by the 1973 amendments), which states inter alia:

> "The writ shall be allowed in all cases where the inferior court, officer, or tribunal other than an agency as defined in subsection (1) of ORS 183.310 in the exercise of judicial or quasi-judicial functions appears to have:
>
> "* * * * *
>
> "(2) Failed to follow the procedure applicable to the matter before it or him;
>
> "* * * * *
>
> "(4) Improperly construed the applicable law;
>
> to the injury of some substantial right of the plaintiff, and not otherwise. The fact that the right of appeal exists is no bar to the issuance of the writ."

In *Brooks v. Dierker,* 275 Or 619, 552 P2d 533 (1976), a land use case, the Supreme Court said that writ of review procedure (ORS 34.010 et seq) should be employed rather than declaratory judgment where an aggrieved party is seeking judicial review of quasi-judicial decisions of local governing bodies.

The reason given by the majority for rejecting writ of review in this case is that the action of the city council in discharging petitioner was administrative

[ 276 ]

rather than quasi-judicial. *See, Schlichting v. Bergstrom,* 13 Or App 562, 511 P2d 846 (1973).

I cannot agree. In my view this action was quasi-judicial.[1] I do not see how it can be characterized as purely administrative as in *Schlichting.*

Unlike in *Schlichting,* petitioner Graziano was not a probationary employe. He had already successfully passed his six-months' probationary period and had been advised by the city on January 7, 1974, that he was now the regular chief of police. The council did in fact give petitioner notice and a hearing, although he argues that both were inadequate.

Second, and again unlike in *Schlichting,* the charter provided three specific grounds for discharge of appointed city officials, namely, "malfeasance," "inattention," and "incompetency." Under petitioner's theory of his case (which the majority rejects), he was not discharged on any of these grounds and that therefore the discharge was unlawful. This raises a pure question of law, and is precisely the type of issue characteristically reviewable by writ of review, as the Oregon cases cited below demonstrate.

This court has previously entertained writ of review proceedings in at least three other cases brought by discharged or demoted city police officers in which the same type of issues that are raised here were decided by this court. In none of them did we express

---

[1] Although the term "quasi-judicial" is not defined in ORS 34.010 et seq, in 35A Words and Phrases 464 et seq (1963), we find the following:

The term quasi-judicial as applied to acts of city officials indicates acts presumably the product or result of investigation, consideration and deliberate human judgment based upon evidentiary facts of some sort, in a matter within the discretionary power of such board or officer. *Oakman v. City of Eveleth,* 163 Minn 100, 203 NW 514 (1925); *Adamson v. Minnehaha County,* 67 SD 423, 426-27, 293 NW 542, 543 (1940).

We also find this:

A borough council in hearing charges against a police officer was not acting as a legislative agent or an inferior court, but was exercising a quasi-judicial function. *Borough of Jamesburg v. Hubbs,* 6 NJ 578, 80 A2d 100 (Sup Ct 1951).

any qualms as to the correctness of the remedy employed by the complaining police officer. *See, for example, Orr v. Civil Service Board,* 30 Or App 739, 567 P2d 1076 (1977) (discharge of a city police officer); *Waite v. Bese,* 28 Or App 389, 559 P2d 1291 (1977) (demotion of a city police officer); *Stueve v. Everett,* 11 Or App 18, 500 P2d 491, *rev den* (1972) (discharge of a city police officer). *See also, Evans v. Schrunk,* 4 Or App 437, 479 P2d 1008 (1971), and numerous cases cited therein. Are these cases now overruled on this point?

I now turn to the merits in the case at bar.

The rationale of the majority's conclusion on the merits, as best I understand it, is this: the appointed city officials of Canby, including petitioner chief of police, hold their offices during the pleasure of the council, and that the sentence "[t]hey are subject to removal at any time by the Council for malfeasance, inattention or incompetency" is merely an enumeration of a few examples of an apparently limitless number of grounds on which appointed officers may be summarily removed. The majority opinion concludes with this pronouncement:

> "* * * We think it is reasonable to assume that the draftsmen of the city charter would have intended that the elected officials prevail over their appointed subordinates—even to the point of being able to discharge appointed bureaucrats for nothing more than an honest, good-faith disagreement over political policies."

In my view the foregoing analysis and interpretation of the city charter is patently untenable and contrary to accepted rules of statutory construction.

It is well settled that in the construction of city charters and ordinances ordinarily the same rules of construction applicable in construing statutes are utilized *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 364 P2d 627 (1961); *Duncan v. Dryer,* 71 Or 548, 143 P 644 (1914); 2 E. McQuillin, Municipal Corpora-

tions 679, § 9.22 (3d ed rev 1966); 56 Am Jur 2d 443, Municipal Corporations § 398 et seq (1971).

These two conflicting provisions quoted above are all part of the same section, deal with the same subject and must therefore be construed together, giving effect to the manifest legislative intent and meaning to each provision thereof if possible. *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740 (1966); *City of Portland v. Duntley,* 185 Or 365, 203 P2d 640 (1949); *Haas v. Myers,* 10 Or App 495, 500 P2d 1068 (1972). As the Supreme Court said in *Union Pac. R. R. Co. v. Bean,* 167 Or 535, 549, 119 P2d 575 (1941), " '[i]t is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every section, clause, word or part of the act. * * *' " Similarly, in *James et al. v. City of Newberg et al.,* 101 Or 616, 201 P 212 (1921), the court stated that in construing a provision of a city charter, the charter will be considered in its entirety. A corollary to this rule is this: Where general provisions of a charter are followed by particular provisions, the general provisions are limited by the particular. 2 E. McQuillin, Municipal Corporations 679, 684, § 9.22 (3d ed rev 1966), citing numerous decisions from California, Colorado, Kentucky, Minnesota, Missouri and Texas. Essentially this same rule was applied in *Leet v. Barr et al.,* 104 Or 32, 202 P 414, 206 P 548 (1922), in construing two different statutory provisions, one general and the other special and specific.

Construing chapter III, section 9 of the present city charter as a whole, as we must under the accepted rules of statutory interpretation, the conclusion is inescapable that while appointed city officers, including petitioner, serve at the pleasure of the council, they may be removed only for "malfeasance, inattention or incompetency."[2] This is in essence a provision

---

[2] The parallel provision of state law specifying the grounds for suspension or removal of state employes is ORS 240.555, which provides:

"(1) The division shall establish by rule a procedure in accordance

that removal must be for any one of the three enumerated causes. Inasmuch as petitioner was removed for a reason[3] other than the three enumerated, it follows that his removal was contrary to law and therefore must be set aside.

This construction is reinforced by the history of the particular provision of the Canby charter in issue here.

The 1893 legislative Act, which incorporated the City of Canby, stated in part:

> "The mayor, with the consent of the majority of the city council, has power, and it is his duty to organize, govern, and conduct the police force within the limits aforesaid, and to that end may,—
>
> "* * * * *
>
> "2. Remove or suspend any of the police, including the chief, for any cause they may deem sufficient, to be stated in the order for dismissal;
>
> "* * * * *." Laws of Oregon 1893, § 58, pp 684, 698.

This specifically gives unlimited authority to terminate a chief of police at any time, so long as the cause is stated in the order of dismissal.

---

> with this chapter whereby the appointing authority in any division of the service may suspend, reduce, demote or dismiss an employe thereof for misconduct, inefficiency, incompetence, insubordination, indolence, malfeasance or other unfitness to render effective service.
>
> "* * * * *"

[3] The term "irreconcilable differences" may have been borrowed by the author from the law of domestic relations. ORS 107.025 provides:

> "(1) The dissolution of a marriage or a permanent or unlimited separation may be decreed when irreconcilable differences between the parties have caused the irremediable breakdown of the marriage.
>
> "* * * * *"

*See also,* 22A Words and Phrases 60, Irreconcilable Differences (Supp 1977).

We cannot conceive how the term "irreconcilable differences" as applied in the instant case can be treated as being the equivalent of "malfeasance, inattention or incompetency." These terms are simply not synonymous.

The Charter for the City of Canby, chapter X, section 48, p 12 (1916), states:

"The Mayor has power and it is his duty to organize, govern, and conduct the police force within the limits aforesaid, and to that end may:

"\* \* \* \* \*

"2. He may remove or suspend any of the police, including the chief, for any cause he may deem sufficient, to be stated in the order of dismissal, a copy of which shall be filed with the recorder.

"\* \* \* \* \*."

The above provision gave the mayor unlimited authority to terminate the chief of police at any time and for any cause.

Subsequently in 1969 the present Canby city charter was adopted. As previously pointed out, this charter limits the power of the council in the termination or discharge of a city officer.

Usually any essential change in the phraseology of a statutory provision indicates an intention to change the meaning of such provision rather than interpret it. *Roy L. Houck & Sons v. Tax Com.,* 229 Or 21, 366 P2d 166 (1961).

It is fundamental that a public employe may be removed only in accordance with constitutional, statutory or charter provisions relating to the post he holds. *See,* 63 Am Jur 2d 735, Public Officers and Employees § 178 et seq (1972).

Where a municipal charter prescribes the manner for removal of municipal officers, any attempt by the municipality's legislative body to remove an officer in a manner at variance or in conflict with the charter's directives is a nullity. *State, ex rel Gerhardt, v. Krehbiel,* 38 Ohio St 2d 90, 67 Ohio Ops 2d 92, 310 NE2d 251, *appeal dismissed* 419 US 988 (1974).

*Schlichting v. Bergstrom, supra,* and *Bishop v. Wood,* 426 US 341, 96 S Ct 2074, 48 L Ed 2d 684

[ 281 ]

(1976), which were cited and relied upon by respondents, are inapposite on this issue. In *Schlichting* this court held that generally speaking a public employer can base personnel decisions concerning probationary employes on any reason or no reason, with unfettered discretion. In the instant case petitioner Graziano had successfully passed his six-months' probationary period. He was a permanent employe at the time of his dismissal. More important, there was no provision of statute, ordinance or charter in *Schlichting* as in the case at bar specifying that removal must be for enumerated causes.

As to *Bishop*, the issue there was not whether the procedure prescribed in the ordinance for discharge had been followed in discharging plaintiff city police officer, but whether he was entitled to a pretermination hearing. The court held that it was bound by the district court's interpretation of North Carolina law, namely, that the officer was serving at the pleasure of the city and was not entitled to a pretermination hearing.

For the above reasons I respectfully dissent.

Johnson, J., joins in this dissent.