Argued and submitted January 24, 1983, affirmed May 22, 1984

FORMAN et al,
*Petitioners on Review,*

*v.*

CLATSOP COUNTY et al,
*Respondents on Review.*

(TC CC82-156; CA A24527; SC 29833)

681 P2d 786

Nicholas D. Zafiratos, Astoria, argued the cause and filed brief for petitioners on review. With him on the brief was Zafiratos & Roman, Astoria.

Timothy V. Ramis, Portland, argued the cause and filed brief for respondents on review Sports Acres, Inc., Milton O. Brown and Raymond Kittleson. With him on the brief was O'Donnell, Sullivan & Ramis, Portland.

David R. Williams and Barry L. Adamson, Portland, filed an *amicus curiae* brief for Union Oil Company of California. With them on the brief was Williams, Stark, Hiefield, Norville, P.C.

No appearance was filed for Clatsop County.

LINDE, J.

Peterson, C. J., filed a concurring opinion.

## LINDE, J.

Plaintiffs ask us to reverse decisions of the Circuit Court for Clatsop County and of the Court of Appeals that the Land Use Board of Appeals (LUBA) rather than the circuit court had jurisdiction to review Clatsop County's determination that a proposed land development could continue as a nonconforming use.

The Court of Appeals summarized the facts as follows:

> "In 1978, defendants purchased Sports Acres, a 50-acre complex consisting of a swimming pool, tennis courts, tracks and athletic fields. Shortly thereafter, defendants acquired an option to purchase 228 additional acres to develop for recreational vehicle and tent camping sites. After the Clatsop County Planning Commission determined that defendants' intended use was permitted under the then existing zoning ordinance, defendants purchased and began developing the property. In 1980, the County adopted a new zoning ordinance that prohibited defendants' intended use of the property. Defendants sought a resolution from the County that they had a vested right to their nonconforming use of the property. Plaintiffs, owners of property across the river from Sports Acres, opposed the resolution. After a public hearing, at which the County Commission heard arguments and received exhibits, it issued findings of fact and conclusions of law and determined that defendants had a vested right to continue their nonconforming use."

63 Or App 617, 619, 665 P2d 365 (1983) (footnote omitted).

Plaintiffs appealed the county's resolution to LUBA and also began a declaratory judgment action in circuit court. LUBA believed that it lacked jurisdiction and dismissed the appeal. Plaintiffs failed to appeal LUBA's decision. The circuit court, to the contrary, concluded that LUBA was the proper forum for review and dismissed the complaint for declaratory judgment. The Court of Appeals affirmed this dismissal *in banc,* four judges dissenting. 63 Or App 617, 665 P2d 365 (1983). We allowed review to settle the procedural question. We agree with the circuit court and the Court of Appeals and affirm the judgment of dismissal.

■　　The issue is whether the determination of a "vested right" for purposes of allowing a land use not in conformity

with a current land use regulation is a "land use decision of a local government," because if it is, LUBA's exclusive jurisdiction to review it is beyond doubt.[1] The law defines "Land use decision" to mean a "final decision or determination made by a local government or special district that concerns the adoption, amendment, or application of" a land use regulation, among other things. ORS 197.015(10)(a)(A)(iii). "Land use regulation" includes a zoning ordinance. ORS 197.015(10), (11). The Court of Appeals followed these definitions. It concluded that when the county determined that its 1980 zoning ordinance did not prevent continuation of the previously begun development, the county had made a "final decision or determination" concerning the application of the ordinance, that is to say, a land use decision within the exclusive jurisdiction of LUBA.

Plaintiffs do not offer an alternative analysis of the statute. They attach to their petition a copy of LUBA's opinion dismissing their appeal to that tribunal, but that opinion cites decisions of the Court of Appeals which antedated the creation of LUBA and which the court correctly held to be superseded by the 1979 act. Beyond this, plaintiffs point to the practical shortcomings of a "dual system of jurisdiction" and the resulting confusion illustrated by their case. We are mindful of that concern, but we believe that the legislature chose LUBA, not the circuit courts, as the single forum.

■ An *amicus* brief, and the dissenters in the Court of Appeals, maintain that the exclusion of a substantially advanced development from later land use regulations, under the rubric of "vested rights," concerns a "property right." Such a decision certainly concerns the right to use property, as does any decision that limits an owner's previous right to use property in a particular way, "vested" or not. This does not preclude that local governments or agencies may have authority to determine the facts on which application of a rule or exemption from the rule depends.

■■ The statute placing exclusive jurisdiction in LUBA cannot be avoided by arguing that the court only decides on

---

[1] Under Or Laws 1979, ch 772, § 4(1) (as amended), LUBA has "exclusive jurisdiction to review any land use decision of a local government . . . ." *See* ORS 197.825 (1983).

the existence of the asserted property right, not on the application of the land use regulation. So-called "vested rights" do not exist in a vacuum, to be determined by a court abstractly without relation to the regulation against which the right is claimed. The term is relevant only as a shorthand phrase for one element of the applicable land use laws that may require a factual determination like other elements. Under the present legislative scheme, local governments necessarily determine many such facts in deciding on the "application" of their "land use regulations," as those terms are defined in the act. If the facts are disputed, the determination must rest on substantial evidence in the whole record. Or Laws 1979, ch 772, § 4(7); *see* ORS 197.835(8)(a)(c). If the facts are not disputed, they may give rise to a question of law. In either case, the decision on the application of the regulation, if final, is a "land use decision" for which the channel of review is through LUBA. There is no "dual jurisdiction."

In dicta, the Court of Appeals implied that the circuit court might declare a person's "vested right" not to conform to a land use regulation if the person initiated a court proceeding before the local government decided that question. That proposition was not necessary to the court's decision.

The decision is affirmed.

**PETERSON, C. J.,** concurring.

I fully agree with the majority and write separately to raise a concern long felt but hitherto unexpressed in an opinion.

If a person intended to create an inefficient, unpredictable, ineffective, expensive, unresponsive system for review of governmental acts, he or she would use the system we have in Oregon as a perfect model. Ours is senseless and cries for revision. We need an all-purpose writ.

Under our monstrous system, the most intelligent lawyer rarely can advise the client with any measure of confidence. The wealthy client risks his fortune by venturing into the morass of review of a public body's action. The middle class and the poor can't afford the risk. Any administrative or judicial procedure which is so complex that intelligent persons cannot know how to bring their claims or objections to the

appropriate tribunal is more than suspect; it is incompatible with a system of effective government.

The problem arises because under Oregon statutes and judicial decisions, one is rarely sure which door should be opened, which path should be trod. The potential avenues include not less than seven:

Writ of review

Writ of mandamus

Declaratory judgment

Injunction

Appeal to circuit court under ORS ch 183

Appeal to LUBA

Appeal to Court of Appeals

I will cite a very few cases which illustrate the gallons of ink, hours of time and millions of dollars (not to mention the unfair results) which have senselessly been spent and wasted because Oregon's system for review of actions of governmental bodies is so bad.

*Patton v. St. Bd. of Higher Ed.,* 293 Or 363, 647 P2d 931 (1982). The Court of Appeals was reversed because it erroneously believed that its jurisdiction turned on the kind of hearing actually conducted by the agency rather than on whether the proceeding qualified as a contested case. The agency had acted upon the advice of a law school professor.

*Neuberger v. City of Portland,* 288 Or 155, 603 P2d 771 (1980). Question was whether city council's decision was reviewable under writ of review.

*Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979). Circuit court's order quashing a writ of review was affirmed by a divided Court of Appeals. The Supreme Court reversed.

*Brooks v. Dierker,* 275 Or 619, 552 P2d 533 (1976). Declaratory judgment proceeding ordered dismissed because the writ of review procedure should have been pursued.

*Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976). Writ of review proceeding involved review of a special street assessment.

*State ex rel School Dist. v. Columbia Co.,* 66 Or App 237, 674 P2d 608 (1983). Question was whether declaratory relief or writ of review was the exclusive method of review.

*Rogue Fly Fishers v. Water Policy Review Bd.,* 62 Or App 412, 660 P2d 1089 (1983). Decision turned on whether a board's action was a "rule." The Court of Appeals held that it was not and dismissed the petition for judicial review.

*Graziano v. City Council of Canby,* 35 Or App 271, 581 P2d 552 (1978). Petitioner sought relief in a writ of review. The Court of Appeals held that the claim was "not cognizable in a writ of review proceeding," and that petitioner should have pursued "some other means, such as declaratory judgment, a suit in equity or an action at law." 35 Or App at 273.

Donald W. Brodie and my colleague, Hans A. Linde, touch upon some of these inadequacies in an article entitled *State Court Review of Administrative Action: Prescribing the Scope of Review,* 1977 Ariz St L J 537. Professor Davis makes these trenchant comments:

> "No branch of administrative law is more seriously in need of reform than the common law of the state courts concerning methods of judicial review. No other branch is so easy to reform. It has been reformed in only a minority of states.
>
> "An imaginary system cunningly planned for the evil purpose of thwarting justice and maximizing fruitless litigation would copy the major features of the extraordinary remedies. For the purpose of creating treacherous procedural snares and preventing or delaying the decision of cases on their merits, such a scheme would insist upon a plurality of remedies, no remedy would lie when another is available, the lines between remedies would be complex and shifting, the principal concepts confusing the boundaries of each remedy would be undefined and undefinable, judicial opinions would be filled with misleading generalities, and courts would studiously avoid discussing or even mentioning the lack of practical reasons behind the complexities of the system.
>
> "* * * * *
>
> "The most serious consequence of the system is the myriad of cases which fail to reach the merits. Almost as

grievous a fault is the concentration of effort of counsel and of courts on the solution of false problems. Even if miserable failure to clarify could be replaced by shining success, nothing would be gained by constructing bodies of law defining such concepts as judicial, nonjudicial, discretionary and ministerial. Attention should be directed to problems having practical significance—whether particular action should be reviewable, whether the time is ripe for review, what the scope of judicial inquiry ought to be. Furthermore, the extraordinary remedies too often compel unsound results. For instance, when mandamus is held to be the only correct remedy, many courts hold that administrative discretion may not be reviewed; yet one major purpose of judicial review should be to keep agencies' action within the limits of reasonableness as conceived by the courts. To make the scope of review depend upon fortuities about technical remedies is obviously unsound.

"The cure is easy. Establish a single, simple form of proceeding for all review of administrative action. Call it 'petition for review.' Get rid of extraordinary remedies as means of review. Focus attention then on the problems having significance—whether, when, and how much to review." K. Davis, Administrative Law Text 458-9 (1972).

Under the system now in effect, the courts (and other bodies, such as LUBA) are cluttered with cases which are there for no other reason than that of uncertainty. Good lawyers are required to file multiple cases. The first course of action of attorneys resisting the claims is to raise a host of procedural objections because of the same uncertainties. Tribunals — sometimes multiple tribunals — are required to decide the procedural questions before reaching the merits. The result, in many cases, is that the parties never get a decision on the merits of the controversy.

I suggest that the legislature create a unitary system for review of decisions of governmental bodies. The system should be such that, in one proceeding, all objections of the objecting party can be raised, all contentions ruled upon by the tribunal, with one route of appeal thereafter. Under the system now in effect, lawyers sometimes file as many as three separate proceedings because of uncertainty of which mode of review is proper. Unfortunately, as this case illustrates, even

after a decision by one tribunal, a person is never sure that that ends the matter.[1]

I pray for change.

---

[1]Statutes such as ORS 46.063 are one means of avoiding the problem. It insures prompt resolution of "jurisdictional disputes" involving circuit and district courts, without dismissal of the case "for having been filed in the wrong court."

*See also* former ORS 2.530 (repealed Or Laws 1977, ch 158, § 5), which provided for transfer of cases between the Supreme Court and the Court of Appeals. It also mandated that "[n]o appeal * * * shall be dismissed * * * for having been filed in the wrong court."