has been no objection except that two letters were filed with the Clerk of the court. These, apparently, showed no appreciation of the real situation.

A regular hearing was held. The time spent by all the petitioners was accounted for in detailed fashion. The reports of progress in administration and litigation are encouraging.

The court approves the modified allowances recommended by the Special Master.

Order will enter.

**In the Matter of the Petition of PORTLAND ELECTRIC POWER COMPANY, a corporation, Debtor.**

No. B–23986.

No. 884.

United States District Court, D. Oregon.

June 3, 1943.

See also D.C., 97 F.Supp. 857.

Clarence D. Phillips, Portland, Or., for debtor.

Ralph H. King, Portland, Or., for independent trustees of debtor.

Frederick M. DeNeffe, Paul E. Kern, Portland, Or., for Bondholders Committee.

W. Stevens Tucker, San Francisco, Cal., for Securities & Exchange Commission.

Charles A. Hart, Portland, Or., Edgar G. Crossman and Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Guaranty Trust Co.

Justin N. Reinhardt, Portland, Or., for First Preferred Stockholders.

MacCormac Snow, Harry Beckett, Robert T. Mautz and V. Lyle McCroskey, Portland, Or., for Prior Preference Stockholders.

JAMES ALGER FEE, Chief Judge.

This matter comes on for the confirmation of the report of the Special Master, designated by the court, recommending payment of interim fees and expenses of the independent trustees and counsel during the months of January, February and March. This is routine procedure. The amounts asked for are the same as have been allowed for a considerable period of time. The requisite notice was given and there

**Petition of PORTLAND ELECTRIC POWER CO.**

**DELZELL et al. v. FLAGG et al.**

No. B–23986.

No. 900.

United States District Court, D. Oregon.

Nov. 29, 1943.

See also, D.C., 97 F.Supp. 857.

Clarence D. Phillips, Portland, Or., for debtor.

Ralph H. King, Portland, Or., for independent trustees of debtor.

Frederick M. DeNeffe, Paul E. Kern, Portland, Or., for Bondholders Committee.

W. Stevens Tucker, San Francisco, Cal., for Securities & Exchange Commission.

Charles A. Hart, Portland, Or., Edgar G. Crossman and Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Guaranty Trust Co.

Justin N. Reinhardt, Portland, Or., for First Preferred Stockholders.

MacCormac Snow, Harry Beckett, Robert T. Mautz and V. Lyle McCroskey, Portland, Or., for Prior Preference Stockholders.

JAMES ALGER FEE, Chief Judge.

In a pending proceeding for the reorganization of Portland Electric Power Company, Debtor, a public utility holding company, R. L. Clark and Thos. W. Delzell, Independent Trustees of the debtor by appointment of this court, filed a petition to require George H. Flagg, Public Utilities Commissioner of Oregon, to show to this court any facts constituting an emergency requiring the making and entering of any order reducing the existing rate schedules of Portland General Electric Company in advance of a hearing in a formal proceeding pending before the Commissioner. The Portland General Electric Company is, excepting qualifying shares, a wholly owned subsidiary of the debtor and is engaged as a public utility in the generation and distribution of electric power. The major portion of its system is in Oregon. About April 1, 1943, a proceeding to investigate the rate structure of Portland General Electric Company was instituted under statutory authority by the Commissioner and that proceeding is still pending. The Independent Trustees of the debtor were permitted to intervene therein.

It is alleged in the instant petition, among other things, that George H. Flagg, unless restrained, will enter an order, in advance of a hearing in that formal proceeding, directing a reduction in the existing rate schedules of the utility.

The matter was presented ex parte, a showing having been made as to the necessity therefor, and the court granted a temporary restraining order against the Commissioner until the matter could be heard. Prior to the day set to show cause upon the petition, the Commissioner filed a motion to dissolve the temporary restraining order. Upon this, hearing was had and briefs were filed. The question of the jurisdiction of this court to issue a restraining order, the power of the Independent Trustees to petition for such an order and the power of the Public Utilities Commissioner to order rate reductions of a public utility, during the pendency of a formal proceeding before him for such purpose, were debated. The court took the matter under advisement but did not require the Commissioner to state the facts relating to the existence of an emergency. The temporary restraining order remains in effect. The court will now consider the matter upon the petition and the motion to dismiss.

The Commissioner claims the power to issue an order reducing the rates of this public utility under the terms of § 112–471, Oregon Compiled Laws Annotated, which is as follows: "The commission (commissioner) shall have power, when deemed by it necessary to prevent injury to the business or interests of the people or any public utility of this state in case of any emergency to be judged of by the commission (commissioner), to temporarily alter, amend, or with the consent of the public utility con-

cerned, suspend any existing rates, schedules and order relating to or affecting any public utility or part of any public utility in this state. Such rates so made by the commission (commissioner) shall apply to one or more of the public utilities in this state or to any portion thereof as may be directed by the commission (commissioner), and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission (commisioner)."

The power of the court of bankruptcy as to property under its jurisdiction is paramount. The Independent Trustees of a company in reorganization have the duty to conserve the property of the debtor. In pursuance of such an aim, they are empowered to seek relief from this court or instruction as to future proceedings. Thus, the matter does not fall within the rule relating to derivative suits.[1]

It is contended by the Commissioner that the restraining order should be dissolved, because he is not subject to the jurisdiction of the court. However, if property is subject to the jurisdiction of the court, any person who threatens interference therewith is liable to restraint. The argument then proceeds that this property is not within the jurisdiction of the court, because the Portland General Electric Company is a separate entity, is solvent and has never been brought within the scope of the bankruptcy proceedings. However, it is a wholly owned subsidiary and its stock is the principle asset to be dealt with in the reorganization proceedings. Any circumstance which affects the value of this stock will affect the reorganization proceeding and if the value thereof be decreased, the reorganization proceeding may fail entirely of its purpose. The bankruptcy court, then, through its agents, must protect the value of this stock. By the present sections relating to corporate reorganization, ample power is given to take all measures which are necessary to protect the corpus of the estate. Such power is not conferred in analogy to the authority originally granted to a court of chancery, but pursuant to specific provision of statutes remedial in their nature and revolutionary in scope, which were deemed essential to the preservation of the economy of the country at the time of the enactment thereof.

The value of the assets of the Portland General Electric Company is reflected through this stock into the stock of the debtor which is held by numerous residents of the state of Oregon and other localities. It is well known that the spectre of discriminatory regulation affects the value on the market, not only of the assets of a utility, but also of its stock. In such a situation these elements would also be reflected in the amounts at which this stock of the subsidiary would be valued for distribution, in reorganization of the debtor, to bondholders and stockholders.

It is true that the stockholders of Portland Electric Power Company, the debtor, have contributed money which was diverted by the management to improper purposes and, therefore, cannot be reflected in the present values of the property of the operating company devoted to public use. But these stockholders are represented before this court in this proceeding by their committees, and the Independent Trustees would be remiss in their duty to them and to this court if every effort were not made to see that all values which exist in the property of the operating utility be reflected for their benefit.

It is objected that the legal title of this stock of the Portland General Electric Company and the voting power thereof lies in the Guaranty Trust Company of New York, to which it was mortgaged and pledged as collateral to the Trust Income Bonds of the debtor, pursuant to a previous plan of reorganization. It is alleged in the petition here that if the value of the stock of the Portland General Electric Company is diminished or decreased by reason of the proposed order of the Commissioner, but the holders of said bonds receive a larger number of shares, the Independent Trustees believe that the officers and directors of Portland General Electric Company would not consider that the interest of the Guaran-

---

1. See Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A.

ty Trust Company and the bondholders had been adversely affected. It is further alleged that the officers of Portland General Electric Company, in the opinion of the Trustees, have not adequately resisted the entry of the proposed order, but are inclined to accept it and that the company will not contest such proposed order, if entered.

The record in the reorganization shows that without notice to this court, in which a previous reorganization proceeding of this same debtor was still pending, and immediately prior to the filing of the present petition in reorganization, the management of Portland General Electric Company and Portland Electric Power Company surrendered the possession of said stock of the Portland General Electric Company under the terms of said mortgage or pledge to Guaranty Trust Company. This court has not decided whether or not the previous reorganization proceeding is a phase of the present proceeding or whether the transfer was valid, in view of these and other apparently related circumstances, but has held that the transfer had no influence upon the power of control of the court for the purpose of protecting the property in the interest of all involved. Over objection of the Independent Trustees the court has permitted the pledgee to exercise the voting rights of this stock, subject to definite directions given by the court. The present board of directors and officers of the utility have, therefore, been selected by the pledgee of this stock.

In such a situation the court probably has power to restrain action of the officers or directorate of the Portland General Electric Company, which had a tendency to waste the assets thereof. The court also probably has power to restrain the pledgee from action deleterious to the estate. The theory of lifting the veil of corporate entity would furnish no foundation for the exercise of such power, but a basis may be found in the equitable doctrine of prevention of waste of capital assets by a lienor in possession. The bankruptcy act probably gives express power over this stock under the following language:

"The trustee * * * shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage."[2]

Of the cases which have been cited by either side, although some are analogous, only one seems pertinent on the question of the power of the court. In Palmer v. Com. of Massachusetts,[3] the Federal Court of the District of Connecticut had jurisdiction of an interstate railway under Section 77 of the Acts Relating to Bankruptcies, 11 U.S.C.A. § 205. The trustees of the railway in reorganization went before the Public Utilities Commissioner of Massachusetts, apparently with the consent of the federal court, in an attempt in a formal proceeding to have abandoned certain stations on intrastate branches of the line in Massachusetts. When the Public Utilities Commissioner failed to determine the question for several months, the trustees, reciting the burden and loss to the railway in reorganization by the operation of such stations, petitioned the court for leave to stop further service to them. This the District Court did. The action was reversed by the Circuit Court of Appeals of the Second Circuit.[4] The Supreme Court confirmed the reversal.

The points of differentiation between that situation and the legislation founding it and the one at bar are striking. This statute has an entirely different basis from the one relating to railroad reorganization. The Supreme Court of the United States comments upon the fact that a railroad in reorganization is committed to the joint jurisdiction of the federal District Court and the Interstate Commerce Commission. The court say: "From the requirement of ratification by the Commission of the trustees appointed by the Court to the Commis-

2. § 257, Acts Relating to Bankruptcies, 11 U.S.C.A. § 657.

3. 308 U.S. 79, 87–88, 60 S.Ct. 34, 38, 84 L.Ed. 93.

4. Converse v. Commonwealth of Massachusetts, 2 Cir., 101 F.2d 48.

sion's approval of the Court's plan of re-organization the authority of the Court is intertwined with that of the Commission." Palmer v. Commonwealth of Massachusetts, 308 U.S. 79, 87, 60 S.Ct. 34, 38, 84 L.Ed. 93.

In this case an entirely different statute, passed for the purpose of giving the court almost complete control of an estate for the purpose of rehabilitating it, is under consideration. This distinction is recognized in the Palmer case expressly, the court saying: "But the long history of federal railroad receiverships, with the conflicts they frequently engendered between the federal courts and the public, left an enduring conviction that railroad was not like an ordinary insolvent estate." (308 U.S. p. 86, 60 S.Ct. 38.)

The second distinction between the situations is that in that case the injunction ran against an administrative official of another state. Here, this court is in a situation to know the local color of the questions involved.

The vital distinction between the cases is that, while in the Palmer case the trustees had gone into a regular proceeding for the abolition of service, the court subsequently prematurely accomplished the same end by pre-judging the very question which was before the Commissioner and attained the end by mandatory order. In the instant proceeding, the utility and the Independent Trustees are parties by consent of this court to a formal proceeding to establish just and equitable rates. It is claimed here that the Commissioner desires to anticipate the result in such an orderly proceeding and prematurely and arbitrarily set reduced rates by pre-judging the outcome of that case, with the consent of the utility. The Palmer decision does not in any respect circumscribe the action of this court under these circumstances within the admitted ambit of its power under this peculiar statute.

■ These considerations point to the authority of the court to restrain the officers or directors of the subsidiary or pledgee from giving consent to or acquiescing in action by a public official of the state, which action the court found destructive of the assets of the utility. The section of the statute contemplates that the Commissioner is entitled to take action with the "consent" of the utility. Whether a general reduction of rates can be made without "consent" of the utility is debatable and is not decided here. At least the subsidiary here should not give consent to any action by the Commissioner until this court has approved. The Commissioner is before the court. It is probable that if this public official were insisting upon taking action, found to be destructive by the court, against the utility with its consent or acquiescence, the court might restrain the Commissioner also. But neither that question nor the facts relating to the giving of consent by the utility nor the effect thereof should be determined without the appearance of the parties vitally concerned in the proceeding. In the argument of the Commissioner it was urged that these parties should be before the court. But neither the Portland General Electric Company, nor the officers and directors thereof, nor the Guaranty Trust Company have appeared herein. The court directs that these persons and entities and all other appropriate parties be permitted to intervene or be joined as defendants, and that the proceeding be continued. The Independent Trustees are permitted to file amended and supplemental petitions, if necessary.

■ Attention will now be directed to the prayer that the Commissioner disclose the basis of an alleged order which, it is supposed, he is about to promulgate. The court takes judicial notice that there have been attempts to acquire certain facilities of Portland General Electric Company by municipal public utility districts of the states where these exist, and that considerable interest has been displayed in reducing the rated values of these properties with apparent intention of the acquisition thereof by some governmental body.

■ The court is not concerned with the hotly debated political issue of whether utilities should remain in public or private ownership. The Independent Trustees have carefully avoided taking any position on

such an issue. Such to them has been the consistent direction of this court. But it is of concern to this court and to this community, rate payers and all others, that the persons who have invested funds in this be treated with fairness and equity. To that end the Independent Trustees are required to exert every effort to prevent action being taken which will make these values appear less than they actually are. Likewise, they must bend every effort to prevent any purchaser, whether a governmental body or a private concern, from acquiring this property at a sacrifice price to the detriment of the interests of such stockholders.

It was in the performance of this duty that the Independent Trustees, according to the petition, sought to discover from the Commissioner the facts which he believed constituted an emergency. It is assumed that jealousy of his own prerogatives and resistance to what he may have assumed was the encroachment of federal power prompted the Public Utility Commissioner of Oregon to refuse to outline to officers of this court, charged with responsibility of preventing dissipation of the assets of the Portland Electric Power Company, the facts which he believed constituted an emergency, or the outline of the order he proposed to promulgate. If such a feeling motivated the Commissioner, it is worthy of note that in the event a governmental agency is enabled to purchase the assets of the debtor at an inadequate price because of such an emergency order reducing rates, grave injustice will be done to the thousands of stockholders in Oregon who invested savings in this property. But whatever prompted the Commissioner to refuse to divulge these matters, the right to an injunction cannot be based thereon. The question of the power to issue such an order is decisive.

There are cogent arguments advanced why this court should presently keep the Commissioner under restraint. It is said that no emergency exists and that no facts can be found in advance of formal hearing which justify a declaration thereof. It is contended, then, that the Commissioner has no power under such circumstances to issue an order reducing rates. Further, it is claimed that the main legislative intent was that no order affecting a public utility should be made prior to notice to the utility and an opportunity for it to be heard.[5] It is said, then, that an order reducing rates cannot be temporary in nature, since it will accomplish a permanent deprivation to the utility of the rates during the period when it is in effect.[6] In a period of rapid change, it is pointed out, the utility in a little time may be making less than operating costs.[7] Then it is argued § 112-431, Oregon Compiled Laws Annotated, is not to be construed as giving the Commissioner power without the consent of the utility to make a temporary order for a general rate reduction.[8] It is then contended that the Commissioner should not attempt a general reduction of rates under the precedents.[9] It is also said that the power to "alter" or "amend" a rate schedule in an emergency cannot be conceived of as broader than the right to "suspend".

The courts of the federal system are extremely cautious about encroaching upon or interfering with the functions of the courts or public officers of a state. In this very matter, the utility and the Independent Trustees have been permitted by the court

5. §§ 28, 30, Chapt. 53, Laws of Oregon 1907, now §§ 113–140, 113–149, Oregon Compiled Laws Annotated; §§ 42, 45, 52, Chapt. 279, Laws of Oregon 1911, now §§ 112–442, 445, 451, Oregon Compiled Laws Annotated.

6. Wisconsin Telephone Co. v. Public Service Commission, 232 Wis. 274, 287 N. W. 122, 593.

7. State ex rel. Indianapolis Traction & Terminal Co. v. Lewis, 187 Ind. 564, 120 N.E. 129.

8. See State ex rel. Washington-Oregon Inv. Co. v. Dobson, 169 Or. 546, 553, 559, 130 P.2d 939.

9. Ashbury Transportation Co. v. Union Pacific Railroad Co. (November 30, 1940) 38 P.U.R. 444; Union Pacific Railroad Co. v. Bean, 167 Or. 535, 119 P.2d 575; Re Cincinnati Gas & Electric Company (November 13, 1916) P.U.R. 1917A, 425; City of Cincinnati v. Public Utilities Commission, 96 Ohio St. 270, 117 N.E. 381.

to submit themselves to the jurisdiction of this very public official in a formal proceeding for the purpose of determining the exact question of the rates which it is alleged are now to be determined in the emergency order which the Commissioner is about to issue. There is an additional safeguard in the review by the state courts, provided for in the statute in this formal proceeding.[10] This court was prompted to permit the Independent Trustees to intervene by the fact that the statute [11] requires a plan of reorganization of a debtor, which is a public utility corporation subject to a regulatory commission, to be submitted to such commission, and any amendments or objections by the commission to be considered by the judge.

This court is fully in accord with the idea that in entrusting proper functions to administrative officials initially, responsibility is developed and impartially assured.[12] However, after the appropriate function of ferreting out the complex fact situations and applying the legislative policy thereto has been completed, the courts have power to review the situations to determine whether the administrative proceedings are subject to review judicially and to determine whether these bodies have remained in the canalization of the statute and applied the proper rules of law.

Therefore such arguments should be addressed to the sound discretion of the Public Utilities Commissioner. That official is charged with the protection of the security holders of this utility, many thousands of whom live in Oregon, as well as the rate payers. This court has confidence that that official, without consideration of all the factors involved, will neither take arbitrary and unwarranted action nor enter an order which will indicate a pre-judgment of the rate situation of this utility. Be that as it may, the issues upon which the argument of the Trustees is based are as yet moot. Nothing can be determined by the court in the present posture of the proceedings. Until vivified by action of the Commissioner, no one can discern what the nature of such an order will be. There is no assurance that the Commissioner will act, nor in any event what the terms of the order will be, if issued.

■ Here the petition seems to assume that the court should hold inquisition into the motives and purposes of the Commissioner and prevent him from taking action until he has unbosomed himself of all the facts upon which he intends to base an order which he may be on the point of issuing. It is certain that if this power exist, it should not be exercised. No damage, irreparable or otherwise, can arise from the issuance of an order, but only from an attempt to enforce an improper or oppressive order.

At the present time, the court is of opinion that no injunction should be laid upon the Commissioner to require him to disclose what he believes to be the nature of the emergency, nor what should be the nature of the order he may have in mind.

The temporary restraining order will continue in effect only until the court can determine whether the utility should be restrained from consenting or acquiescing in certain orders which may be issued by the Commissioner.

10. Oregon Compiled Laws Annotated [1940] § 112-454.

11. 11 U.S.C.A. § 577.

12. Mr. Justice Brandeis concurring in St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 92, 56 S.Ct. 720, 80 L.Ed. 1033.