Argued April 21, affirmed May 5, 1954

STATE ᴇх ʀᴇʟ., STATE DENTAL ASSOCIATION
ᴇᴛ ᴀʟ. *v.* SMITH ᴇᴛ ᴀʟ.

270 P. 2d 142

*E. G. Foxley,* Deputy Attorney General, of Salem, argued the cause for appellants. With him on the brief was Robert Y. Thornton, Attorney General, of Salem.

*W. C. Winslow,* of Salem, argued the cause for respondents. With him on the brief was Norman K. Winslow, of Salem.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and TOOZE, Justices.

TOOZE, J.

This is a suit commenced under the declaratory judgment act (ORS 28.010 to 28.060, incl.), by the State of Oregon ex rel., the Oregon State Dental Association, a corporation, et al., as plaintiffs, against Edgar W. Smith et al., as defendants. Decree as prayed for in plaintiffs' complaint was entered in favor of plaintiffs; defendants appeal.

The individual plaintiffs comprise the advisory council of the Oregon State Board of Higher Education in connection with the operation of the Dental School of the University of Oregon, and the individual defendants comprise the Oregon State Board of Higher Education.

The suit is for the purpose of securing an interpretation and construction of ch 160, Oregon Laws 1945, now ORS 352.100 to 352.185, incl., and, particularly, to determine the status of the Dental School and the duties of the Oregon State Board of Higher Education with relation thereto.

■ Plaintiffs maintain, and upon the oral arguments in this court able counsel for defendants frankly conceded, that the merits of this controversy are matters of great public concern and importance. For that reason, and based upon our decision in *Recall Bennett Com. v. Bennett et al.*, 196 Or 299, 316, 249 P2d 479, 487, we brush aside all technical questions presented by defendants in their brief and proceed to a consideration of the matter on its merits. 1 Anderson 126, Declaratory Judgments, § 63.

The sole question to be considered and determined is whether the Dental School of the University of Oregon is a separate and distinct department or school within the educational system of this state and is under the direct jurisdiction, management, and control of the Oregon State Board of Higher Education, or whether it is simply another adjunct, subdivision, or department of the University of Oregon, and under the direct management and control of the executive officers of said university.

■ To solve the problem, it is necessary for us to consider and construe the provisions of ch 160, Oregon Laws 1945 (ORS 352.100 to 352.185, incl.). We agree with defendants that in the construction of a statute it is the duty of the court to ascertain and declare what is expressed therein without the omission or insertion of terms or substance. *Union Pac. R. R. Co. v. Bean*, 167 Or 535, 546, 119 P2d 575; ORS 42.230.

■ In *Swift & Co.* and *Armour & Co. v. Peterson,* 192 Or 97, 108, 233 P2d 216, Mr. Justice WARNER, speaking for the court, said:

"The cardinal rule for the construction of a statute is to ascertain from the language thereof the intent of the lawmakers as to what purpose was to be served, or what object was designed to be attained. Leonard v. Ekwall, 124 Or. 351, 359, 264 P. 463; Fox v. Galloway, 174 Or. 339, 346, 148 P2d 922."

■ However, it is axiomatic that when the legislature in adopting an act makes use of plain, unambiguous, and understandable language, it is presumed to have intended precisely what its words imply. There is no occasion to go beyond those words and their plain meaning to ascertain, by the application of rules of statutory construction, the legislative purpose. *Fox v. Galloway,* supra; 82 CJS 571, Statutes, § 322b (1), (2).

■ We are of the opinion that ch 160, Oregon Laws 1945 (including the title), is couched in language that is definite, certain, understandable, and free from ambiguity. Before giving attention to that statute, we shall consider briefly the status of Oregon's institutions of higher learning, and the duties of the Oregon State Board of Higher Education with respect thereto.

Prior to 1929 the state's institutions of higher learning were operated separately and independently, each being governed by its own board of regents. In 1929 a complete change was wrought in the state's educational system. By ch 251, Oregon Laws 1929 (ORS 351.010 et seq.), there was created a department of the government of the state of Oregon to be known as the department of higher education. Section 1 of the Act provided that this department "shall be conducted

under the control of a board of nine directors, to be known as the state board of higher education". By § 6 of the Act, it was provided that "on and after July 1, 1929, the department of higher education shall succeed to and hereby is invested with all the powers and duties of the board of regents of the University of Oregon, the board of regents of the Oregon State Agricultural college [Oregon State College], the board of regents of the normal schools, and the board of higher curricula, which boards hereby are abolished effective July 1, 1929". Section 9 of the Act provided in substance that as soon as practical, the state board of higher education should secure the assistance of some nationally recognized, impartial authority or authorities to make a complete survey covering the present conditions and future needs of all branches of state supported higher education and scientific research in Oregon. The survey was to include a study of the experience of other states in dealing with similar higher education problems, and the results of the survey were to be embodied in a report, and, based thereon, the Board should proceed to draft a program of higher educational developments adapted to the needs of the state. Section 10 of the Act provided that "the board shall inaugurate its program beginning July 1, 1931, and shall have full authority to reorganize the work of each and all of the institutions under its control so as to eliminate unnecessary duplication of equipment, courses, departments, schools, summer schools, extension activities, offices, laboratories and publications".

Under this statute the state's entire system of higher education was reorganized. The survey was made and the report filed; and growing out of such reorganization, the medical school of the state of Oregon (generally known as the University of Oregon

Medical School) was made a distinct and separate department of said educational system, administered directly under the supervision and control of the Board of Higher Education. Also, Oregon State College at Corvallis, the University of Oregon at Eugene, the General Extension Service, the Oregon College of Education at Monmouth, the Southern Oregon College of Education at Ashland, and the Eastern Oregon College of Education at La Grande were made separate and distinct departments of the department of education, all administered directly under the supervision of the Board of Higher Education.

It is in the light of the foregoing system of higher education in Oregon that we must consider ch 160, Oregon Laws 1945. Although the title to that act is not necessarily controlling, nevertheless, its plain wording, in view of the provisions of the statute itself, is significant. The title to the Act reads as follows: ·

"To create *a new department* in the higher educational system of the state of Oregon, to be known as the dental school of the University of Oregon, *said school to be a distinct and separate department of said educational system under the jurisdiction, management and control of the board of higher education,* its successors and assigns, subject to the limitations of this and other laws; to accept the title of the real estate and physical personal properties of North Pacific College of Oregon, and to continue the dental, educational and other work heretofore conducted by said college and its predecessors; *to accord to the graduates of said North Pacific College of Oregon and its predecessors the status of alumni of the dental school of the University of Oregon,* herein created; to confer upon the board of higher education and its successors and the University of Oregon all of the powers and privileges necessary or desirable to carry out the pur-

poses hereof; and declaring an emergency." (Italics ours.)

It will be observed that the foregoing title refers to "a new department *in the higher educational system* of the State of Oregon", not to a new department of the University of Oregon; to a new school that is "to be a distinct and separate department *of said educational system* [not of the University of Oregon] under the jurisdiction, management and control of the board of higher education". (Italics ours.)

In the preamble to the Act it is first stated that North Pacific College of Oregon is an eleemosynary and educational corporation which, for many years, had been conducting a nonprofit educational institution for the teaching of the science and practice of dentistry. It is further stated that Dr. Herbert C. Miller, president of said institution, and his associates proposed to convey all the real property owned by said college, together with all equipment contained therein, to the state of Oregon, free from debt and financial liability, subject to the following conditions:

"The dental school hereby created shall operate and remain in the buildings on the property above described for a period of not less than five years from the effective date of this act; in case thereafter the state of Oregon shall see fit to remove said dental school from said location, and said property, or any portion thereof, is sold or leased or occupied for purposes other than dental education, the money from said sale or lease shall be used to provide, or toward providing, adequate housing and maintenance of said dental school *as a distinct unit of the department of higher education of the state of Oregon,* and said money shall be devoted to no other purpose than dental education; now, therefore, * * *." (Italics ours.)

Section 1 of the Act then provides:

"Section 1. *There is created a new department in the higher educational system of the state of Oregon,* to be known as the dental school of the University of Oregon, *and said dental school shall be a distinct and separate department of said educational system,* but shall be under the jurisdiction, management and control of the board of higher education and its successors." (Italics ours.)

Other portions of the Act which are material to our consideration of the problem before us are as follows:

"Section 2. The said state board of higher education in the management and operation of said dental school shall have all of the general powers, so far as applicable or necessary, that are granted to said state board of higher education in the management of the University of Oregon, and in addition thereto said state board of higher education shall have the power and authority, and be subject to the limitations and conditions, herein contained and set forth.

"Section 3. In addition to the other powers granted hereby, said state board of higher education shall confer, upon recommendation of the faculty of said dental school of the University of Oregon, the degrees of doctor of dental medicine and doctor of dental surgery, and such other degrees as may be authorized by the state board of higher education.

"Section 4. Said state board of higher education shall appoint a dean of said dental school and such other faculty, teachers and employes as shall be deemed desirable. * * *

"And said state board of higher education shall supervise the general course of instruction and enact rules and bylaws for the government thereof, including the faculty, teachers, students and employes therein. Said board shall also prescribe the qualifications for admission into said school, as well as the qualifications and accomplishments required for

graduation therefrom, and the reception of degrees authorized and granted by said school.

"Said board is further authorized to acquire, receive, hold, control, convey, sell, manage, operate, lease, lend, invest, improve and develop any and all property, real and personal, given to said school by donors, or to the university of the state of Oregon, for the use and benefit of said school, whether such gifts be made to the state of Oregon for said school, and all such property given, devised or bequeathed to said school or to the state board of control or to the university or to the state of Oregon for said school, or its benefit, shall be used exclusively for the use, benefit and operation of said school.

"* * * * * *

"Section 7. The governor of the state of Oregon shall appoint an advisory council of five members of the Oregon State Dental Association. The term of the office of said advisory council shall be five years. Of the first council appointed, one shall serve for the term of one year, one for two years, one for three years, one for four years and one for five years; the terms of the first board to be designated by the governor at the time of the first appointment. Thereafter, said members of said council shall be appointed by the governor as vacancies occur.

"In the event of the death, resignation or disqualification of a member of said advisory council, the governor shall declare the position vacant and proceed to fill the same by an appointment for the remainder of the term.

"Failure to continue membership in good standing in said Oregon State Dental Association shall disqualify a member of said advisory council and require his removal by order of the governor.

"The members of said advisory council are hereby authorized and directed to generally observe the conduct of said dental school, to recommend a dean and professors for said dental school and the course of study and curricula therefor, and to ad-

vise the state board of higher education in all matters appertaining to said dental school.

"The members of said advisory council shall serve without compensation but shall be reimbursed for their actual expenses in attending meetings of said advisory council.

"Said advisory council shall be convened at least once each month at such place in Portland, Oregon, as may be selected by the majority vote of said advisory council.

"Said advisory council shall choose its own officers, consisting of a chairman and vice chairman and a secretary.

"Said advisory council is authorized to incur necessary expenses for postage, telephone and telegraph service and the traveling and subsistence expenses of its members while coming to, returning from and attending meetings of said council.

"All expenses incurred by the state board of higher education under the provisions of this act, including expenses incurred by the advisory council as herein provided, shall be paid upon vouchers duly approved by the state board of higher education in the same manner as other claims against the state.

"Section 8. The state board of higher education is authorized to make such arrangements with said North Pacific College of Oregon whereby the present operation of said dental school will be continued without interruption. The students now matriculated with said North Pacific College of Oregon shall continue as students of said dental school created hereby, with full credits for work accomplished under the regulations of said existing college, and to accord to the graduates of the North Pacific College the status of alumni of the dental school of the University of Oregon."

It is manifest from the express provisions of the statute that the only important part played by the University of Oregon in connection with the dental

school is furnishing it a name, as it furnishes a name to the medical school. Except indirectly, the university itself has nothing whatever to do with the conferring of degrees, that being left to the State Board of Higher Education, upon the recommendation of the dental school faculty. The Board of Higher Education, not the University of Oregon, appoints the dean of the dental school and its entire faculty; *it supervises the general course of instruction* and enacts all rules and bylaws for the school government.

Because of the technical nature of the education and training to be given in said dental school, the legislature provided for the appointment of an advisory council composed of practicing dentists to assist the Board of Higher Education in the performance of its duties. The functions of this council are definitely spelled out in the statute. It is, as its name indicates, strictly an advisory body. The primary responsibility for the management and control of the school rests with the Board of Higher Education. However, the creation of such an advisory council is significant. It is particularly noteworthy that it is charged with the duty of advising the State Board of Higher Education, not the executive officers of the University of Oregon.

Defendants seek to make a point of the fact that the statute provides only for a dean as head of the dental school. They argued: "The section does not provide for the entire administrative staff of a university, such as the president and officers generally recognized in such organizations. * * * The legislature, by expressly providing for a dean of the dental school, clearly intended that the school would be a part of the University of Oregon, and not a separate and distinct institution in and of itself. The failure to provide for a complete administrative staff of a university

or college leads to the conclusion that the remaining organizational offices are to be supplied by the University of Oregon."

It seems to us wholly immaterial that the legislature provided for a "dean" to head the dental school, instead of a "president". That was exclusively a matter for legislative determination. The statute contains ample provisions for the appointment of a complete administrative staff for said school. That is one of the duties devolving upon the Board of Higher Education. Oregon Laws 1945, § 4, supra.

From the clear wording of the statute, it is apparent that the dental school is a separate and distinct department of the system of higher education in this state, and not a subsidiary department or subdivision of the University of Oregon. It is under the direct supervision, management, and control of the State Board of Higher Education, and not under the management and control of the executive officers of the University of Oregon.

The decree is affirmed. Neither party is to recover costs.