Argued April 23, affirmed June 27, 1973

SCHLICHTING, *Appellant, v.* BERGSTROM ET AL
(No. 5239), *Respondents.*

511 P2d 846

*Robert E. Ridgway,* Pendleton, argued the cause for appellant. With him on the briefs was Dennis A. Hachler, Pendleton.

*Edward H. Warren,* Portland, argued the cause for respondents. With him on the brief were Hershiser, Mitchell & Warren, Portland.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C.J.

This is a proceeding in equity in which plaintiff, who was employed as an appraiser by Morrow County, contends his discharge from that position violates his substantive and procedural constitutional rights. Defendants include his former supervisor and the elected

county commissioners. Defendants' demurrer was sustained by the trial court and plaintiff appeals.

The questions presented are whether the trial court had jurisdiction over plaintiff's claims; whether the county is immune; whether plaintiff's discharge violated his procedural rights under the Due Process Clause of the Fourteenth Amendment because he was not granted a pretermination hearing on the grounds for his discharge; whether denying plaintiff a hearing while, by statute, according a hearing to some other public employes violates the Equal Protection Clause of the Fourteenth Amendment, and whether plaintiff can challenge his discharge on the ground that it was "arbitrary."[1]

■ Plaintiff's complaint alleged the trial court's jurisdiction was based on a federal statute, 42 USC § 1983 (1971).[2] In this court, the parties have argued at great length whether this federal statute confers jurisdiction on Oregon state courts. This misses the issue. Without the aid of any federal statute, Oregon courts have jurisdiction to consider whether a public employe's discharge violates his substantive or procedural constitutional rights. *Brush v. Bd. of Higher Education,* 245 Or 373, 422 P2d 268 (1966); *Minielly v.*

---

[1] Papadopoulos v. Bd. of Higher Ed., 14 Or App —, 511 P2d 854, Sup Ct *review denied* (1973), involves related issues.

[2]

"Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

*State,* 242 Or 490, 411 P2d 69, 28 ALR3d 705 (1966); U.S. Constitution, Art. VI.[®]

■ Relying upon *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), defendants contend they are immune from suit because the discharge decision plaintiff challenges was a discretionary act. This is frivolous. Defendants do not have any discretion to discharge any public employe for constitutionally impermissible reasons or by way of constitutionally invalid procedures.

In *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App —, 511 P2d 854, Sup Ct *review denied* (1973), we held that whether a public employe is entitled to a pretermination hearing depends upon his entitlement to continued employment, i.e., his job security; the existence and extent of a public employe's job security depend upon state law governing public employment. *See also, Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972).

ORS ch 241 creates a civil service system for county employes. These statutes are only applicable to counties "having a population of 300,000 persons or more," ORS 241.020, and smaller counties where, by election pursuant to ORS 241.006, the voters choose to make ORS ch 241 applicable to the county. In all other counties the relevant statute provides:

"(1) The county court or board of county com-

---

[®]

"* * * * *

"This Constitution * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

"* * * * *."

missioners of each county shall fix the number of deputies and employes of county officers whose compensation is to be paid from county funds.

"(2) All such deputies and employes shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer." ORS 204.601.

■ Plaintiff's complaint does not allege that Morrow County is subject to the civil service requirements of ORS ch 241, either by having a large enough population or by the Morrow County voters' having chosen to make ORS ch 241 applicable. Thus, while plaintiff was employed as an appraiser by Morrow County the extent of his job security was defined by ORS 204.601 (2), i.e., he was entitled to "* * * hold office during the pleasure of the appointing officer." In this situation, the Due Process Clause of the Fourteenth Amendment does not require Morrow County to grant plaintiff a hearing on the grounds for his discharge. *Board of Regents v. Roth,* supra; *Papadopoulos v. Bd. of Higher Ed.,* supra.

■ Plaintiff contends that the statutory scheme that grants civil service job security to public employes in larger counties, ORS ch 241, while denying civil service job security to public employes in smaller counties, ORS 204.601 (2), runs afoul of the Equal Protection Clause of the Fourteenth Amendment.[4] A similar statutory scheme in the teacher tenure laws was upheld against the same contention in *Bock v. Bend School*

---

[4] We note in passing that plaintiff does not challenge another feature of the same statutory scheme—that being hired and promoted in the larger counties depends on merit measured by performance on competitive examinations, ORS 241.205, while being hired and promoted in the smaller counties is not subject to any such limitation.

*Dist. No. 1,* 252 Or 53, 448 P2d 521 (1968). There is no meaningful distinction between the statutory scheme challenged in *Bock* and the one here involved. *See also, Harrison v. McNamara,* 228 F Supp 406 (D Conn 1964), *affirmed* 380 US 261 (1965); *Jaeger v. Freeman,* 410 F2d 528 (5th Cir 1969); *Medoff v. Freeman,* 362 F2d 472 (1st Cir 1966).

The final and most significant question presented is: Does plaintiff's complaint state a cause of action in alleging his "dismissal was without a reasonable basis, was capricious, [and was] arbitrary" and that "the decisions of each of the defendants were made in an arbitrary and capricious manner."

Courts frequently review administrative and executive determinations for actions that are "arbitrary," "capricious," "unreasonable," or an "abuse of discretion." *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963). Sometimes distinctions between these terms are sought to be made. *See,* 2 Am Jur 2d 503-12, Administrative Law, §§ 650-51. But for present purposes we perceive no practical difference between them, and use the single term "arbitrary" to express the concept involved.

In public employe discharge cases, courts use the term "arbitrary" (or the concept) to express a variety of things. *Phillips v. State Bd. of Higher Ed.,* 7 Or App 588, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), involved a state employe who, by statute, could not be discharged except "for cause." We equated insufficient evidence of the statutory grounds for discharge with arbitrariness. 7 Or App at 592. In this case plaintiff cannot be claiming his discharge is arbitrary in that sense, because he has no similar

statutory right. Also, public employe discharges have been referred to as arbitrary when they are not made in accordance with the procedures required by statutes or the constitution. If, in this case, plaintiff is claiming his discharge is arbitrary in that sense, we have already resolved this contention to the contrary.

In other public employe discharge cases the question of whether the discharge is arbitrary involves examining and weighing the reasons for the discharge without reference to any statutory standard. *See,* e.g., *Johnson v. Branch,* 364 F2d 177 (4th Cir 1966). Do the reasons advanced by the employer have any basis in fact, are they substantial or frivolous reasons, etc.? We assume plaintiff is contending his discharge was arbitrary in this sense.

██ In *Papadopoulos v. Bd. of Higher Ed.,* supra, we discussed at length the distinction between tenured and probationary public employes. As in *Papadopoulos* we here use the word "probationary" to describe those public employes who either temporarily or permanently do not have statutorily mandated job security, and we use the word "tenured" to include the various types of statutorily mandated job security. By statute or regulation, tenured public employes enjoy job security in that they can only be discharged for cause. Probationary public employes, like plaintiff in this case, have no statutory job security. As a practical matter tenured public employes can always seek judicial review of a discharge for arbitrariness in the sense of whether or not sufficient evidence establishes the statutory grounds for discharge. *Phillips v. State Bd. of Higher Ed.,* supra. Thus, the question comes down to whether a probationary public employe has a right not to be discharged for an arbitrary, irrational

or groundless reason, even though there are no statutory limits on employer discretion in this context.

An early cause would have apparently answered this question in the negative. In *Eberlein v. United States*, 257 US 82, 42 S Ct 12, 66 L Ed 140 (1921), the court said the dismissal of a federal employe was "* * * not subject to revision in the courts * * *" even though a "* * * subsequent investigation [had] established [the employe's] innocence of the charges * * *" that had been the basis of his dismissal. 257 US at 84. More recent cases, however, contain language suggesting dismissal cannot be predicated on "arbitrary" grounds.

> "* * * [I]n *United Public Workers* [*v. Mitchell*, 330 US 75, 67 S Ct 556, 91 L Ed 754 (1947)], though we held the Federal Government through the Hatch Act could properly bar its employees from certain types of political activity thought inimical to the interests of the Civil Service, we cast this holding into perspective by emphasizing that Congress could not 'enact a regulation providing that no Republican, Jew or Negro shall be appointed to federal office, or that no federal employee shall attend Mass or take any active part in missionary work.' 330 U. S. at 100. * * * We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to statute is patently arbitrary or discriminatory." *Wieman v. Updegraff*, 344 US 183, 191-92, 73 S Ct 215, 97 L Ed 216 (1952).

> "* * * We may assume that * * * [a public employe] could not constitutionally have been * * * [discharged] if the announced grounds * * * had been patently arbitrary or discriminatory— * * * [i.e., because he] was a Democrat or a Methodist.

* * *" *Cafeteria Workers v. McElroy,* 367 US 886, 898, 81 S Ct 1743, 6 L Ed 2d 1230 (1961).

We do not believe these passages amount to holdings by the United States Supreme Court that a probationary public employe has a substantive constitutional right not to be discharged for an "arbitrary" reason. Rather, it appears that the court has used the term "arbitrary" as a shorthand way of expressing violation of clearly established substantive constitutional rights. The court's illustrations so indicate. Discharging a public employe because he was a Methodist, or Jewish, or attended Mass would not be invalid because it was "arbitrary"; it would be invalid under the First Amendment's freedom of religion guarantee or freedom of association guarantee. Discharging a public employe because he was a Democrat or a Republican would not be invalid because it was "arbitrary"; it would be invalid under the First Amendment's freedom of association guarantee.

Also relevant is language in *Shelton v. Tucker,* 364 US 479, 81 S Ct 247, 5 L Ed 2d 231 (1960). There, in considering an Arkansas statute that required teachers[6] to disclose all organizations to which they belonged, the court said:

"These provisions must be considered against the existing system of teacher employment required by Arkansas law. Teachers there are hired on a year-to-year basis. They are not covered by a civil service system, and they have no job security beyond the end of each school year. * * *" 364 US at 482.

[6] Certain issues have been litigated most often in cases involving discharges of teachers. We discuss many such cases infra. The general principles stated in the teacher-discharge cases are equally applicable to all public employes, including plaintiff in this case, who was employed as an appraiser.

After noting that the compelled disclosure require-
ment impaired teachers' right of free association, the
court stated:

> "\* \* \* Such interference with personal freedom
> is conspicuously accented when the teacher serves
> at the absolute will of those to whom the disclosure
> must be made—those who any year can terminate
> the teacher's employment without bringing charges,
> without notice, without a hearing, and without
> affording an opportunity to explain." 364 US at
> 486.

This language seems inconsistent with any notion that
a probationary teacher whose contract was not re-
newed, or any probationary public employe who was
discharged, would be able to challenge such decisions
as arbitrary.

More recently in *Board of Regents v. Roth,*
supra, the Supreme Court held that a discharged pro-
bationary public employe was not entitled to any
statement of the reasons for his discharge. And in
*Perry v. Sindermann,* supra, the Supreme Court did
not comment on the passage from the Fifth Circuit's
opinion that stated "\* \* \* the college may base its
decision not to reemploy a teacher without tenure
\* \* \* upon any reason or no reason at all." *Sinder-
mann v. Perry,* 430 F2d 939, 944 (5th Cir 1970). More-
over, the court concluded in *Roth* and *Sindermann* that
a probationary public employe does not have any prop-
erty interest in continued employment sufficient to be
protected by the Due Process Clause of the Fourteenth
Amendment.

We find it impossible to discern from the opinions
of the United States Supreme Court any rule to the
effect that a public employer cannot discharge a pro-

bationary employe for any reason—even a reason that might fairly be characterized as arbitrary.

In the absence of authoritative guidance from the Supreme Court, the lower courts have fashioned a wide variety of rules in this context. As already noted, the Fifth Circuit has adopted a relatively simple rule: a public employer can fire a probationary employe for any reason or no reason. 430 F2d at 944; *accord, Parker v. Board of Education of Prince George's County, Md.,* 237 F Supp 222 (D Md 1965), *affirmed* 348 F2d 464 (4th Cir 1965), *cert denied* 382 US 1030, *rehearing denied* 383 US 939 (1966). Other formulations are more complex.

> "* * * [A]t least with respect to matters purely administrative in nature, viz., the employment of University personnel and the like, the discretion of the Board necessarily is broad and subject only to such judicial review as normally is available to litigants allegedly aggrieved by administrative action generally. * * *
>
> "Without question, then, the Board is on relevant and sound ground in asserting that the decision embodied in its resolution cannot be overturned in the absence of a clear and affirmative showing that it was premised upon arbitrary or capricious conduct. That a court is, in reviewing a determination of an administrative body, limited to deciding whether the administrative action was arbitrary, unreasonable or capricious long has been settled. * * *" (Footnote omitted.) *McConnell v. Anderson,* 451 F2d 193, 195-96 (8th Cir 1971), *cert denied* 405 US 1046 (1972).
>
> "In our opinion in the second round of *Drown v. Portsmouth School District,* 451 F.2d 1106 (1st Cir., * * *), we laid down the standard for measuring a non-tenured teacher's challenge to a statement of reasons on the ground that they are arbitrary and capricious. There we held that to state a claim,

a high school teacher must allege, and to prevail, he must prove, that each of the stated reasons is trivial, or is unrelated to the educational process or to working relationships within the educational institution, or is wholly unsupported by a basis in fact. The same standard, we conclude, may properly be applied to the claims of a college teacher, although with due recognition that a college presents a different context and has a different educational mission." *McEnteggart v. Cataldo,* 451 F2d 1109, 1111 (1st Cir 1971), *cert.denied* 408 US 943 (1972).

"\* \* \* [T]he decision not to retain a nontenured professor employed by a state university is to be measured against a standard 'considerably less severe than the standard of "cause" as the latter has been applied to professors with tenure.' \* \* \* More specifically, the appropriate standard for a district court to apply is that the decision 'may not rest on a basis wholly unsupported in fact, or on a basis wholly without reason.' \* \* \*" *Cook County College Teachers U., Loc. 1600, A. F. T. v. Byrd,* 456 F2d 882, 889 (7th Cir), *cert denied* 409 US 848 (1972).

Neither the courts that do nor the courts that do not review probationary public employe discharges for arbitrariness have articulated, at any significant length, the basis for their different results. In fact, it appears that the proper resolution of this question has been more often assumed than considered. But *see, Jaeger v. Freeman,* supra, 410 F2d at 531 ("\* \* \* Thus far this Circuit has not claimed any such right of review, \* \* \* [i.e., whether the discharge of a probationary employe was arbitrary.]"); *Zimmerman v. Board of Education of Newark,* 38 NJ 65, 183 A2d 25 (1962), *cert denied* 371 US 956 (1963) (Mr. Chief Justice Weintraub, concurring) :

"As a general proposition, powers vested in

local government must be exercised reasonably and the judiciary will review local action for arbitrariness \* \* \*. The question is whether probationary employments are beyond that proposition.

"The legislature intended wide latitude in the employing authority to determine fitness for permanent employment. It is clear that public employment may not be refused upon a basis which would violate any express statutory or constitutional policy. A simple example would be discrimination for race or religion. But I am not sure such specific limitations are the only restraints. If the employing agency, for an absurd example, thought blondes were intrinsically too frivolous for permanent employment, a court would find it difficult to withhold its hand.

"But if we may inquire into 'unreasonableness,' it would seem to follow that there must be a 'reason,' i.e., 'cause' for refusal to continue the teacher into a tenure status. That course has its difficulties. \* \* \*" 38 NJ at 79-80.

Perhaps the difference between those courts that do permit a discharged probationary public employe to challenge his discharge as arbitrary and those that do not permit such challenges is more semantic than real. In *Cook County College Teachers U., Loc. 1600, A. F. T. v. Byrd,* supra, the court entertained a probationary teacher's contention that his discharge was arbitrary. The teacher's former supervisors testified they considered him to be "abrasive," "uncooperative," "inflexible," "immature," and " 'unrealistic.' " 456 F2d at 887-88. Based on this testimony, the court concluded the discharge was not arbitrary. Likewise, in *McEnteggart v. Cataldo,* supra, a dismissed probationary teacher's former supervisors claimed the teacher had "irritated \* \* \* members of his depart-

ment," had been "difficult to get along with," had seemed "aloof," and had been " '* * * a threat to the harmony of our department'." 451 F2d at 1110-11. This testimony was also held sufficient to overcome the contention that the discharge was arbitrary. If such showings are sufficient to make a discharge not arbitrary, perhaps some courts' supposed willingness to review whether a discharge was arbitrary is a more illusory than genuine comfort for the discharged employe.

In those jurisdictions where the courts are willing to determine whether the *discharge* of a probationary public employe was arbitrary, it would seem to follow that they would also have to be willing to determine whether the *hiring* of a probationary public employe was arbitrary. This has happened. The decision of a New York public college to hire Dr. Bertrand Russell as a professor was challenged in a taxpayer's suit. The court held

> "that the acts of the Board of Higher Education of the City of New York in appointing Dr. Russell to the Department of Philosophy of the City College of the City of New York, to be paid by public funds, is in effect establishing a chair of indecency and in doing so has acted arbitrarily, capriciously and in direct violation of the public health, safety and morals of the people * * *." *Kay v. Board of Higher Education,* 173 Misc 943, 18 NYS2d 821, 831 (Sup Ct NY Co), *affirmed without opinion* 259 App Div 879, 20 NYS2d 1016 (1940).

■ We conclude that the better approach is for courts to not review whether the hiring or firing of a probationary public employe is "arbitrary." Except for the substantive constitutional limitations discussed

elsewhere,[©] a public employer can base personnel decisions concerning probationary employes on any reason or no reason. In short, personnel decisions concerning public employes are within the unfettered discretion of their employers.

■ One commentator suggests that while instances of governmental discretion not subject to judicial review are "uncommon," they do exist:

> "If an administrative agency is in fact endowed with purely discretionary powers, judicial review of its discretionary acts may properly be denied. An act of free discretion, referable to no fixed standard except government desire, is not appropriate for judicial review." 2 Cooper, State Administrative Law 669 (1965).

An example of such unfettered, unreviewable discretion would be "* * * if the President discharges a cabinet officer for singing the wrong tune on foreign policy * * *." 1 Davis, Administrative Law Treatise 452, 454, § 7.11 (1958). An example from Oregon jurisprudence would be the Governor's executive clemency power; whether he grants or denies a pardon is not subject to judicial review. *Eacret et ux v. Holmes,* 215 Or 121, 333 P2d 741 (1958). If judicial review is never available to the discharged cabinet officer, it should not be shocking that judicial review for "arbitrariness" is not available to a public employe discharged during what is usually a relatively brief initial probationary period.

■ In short, "* * * [n]ot all operations of government are subject to judicial review, even though they may have a profound effect on our lives." *Curran v.*

---

[©] Perry v. Sindermann, 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972).

*Laird,* 420 F2d 122, 133 (DC Cir 1970).⑦ All levels of government occasionally make decisions based on "* * * determinations that lie outside sound judicial domain in terms of aptitude, facilities and responsibility." *Curran v. Laird,* supra, 420 F2d at 129. Personnel decisions involving probationary employes are one such matter.

Any other approach would be a serious judicial erosion, if not abolition, of the concept of probationary status in public employment. The essence of probationary employment is that there are no restrictions on an employer's decision to retain or not to retain an employe. Indeed, such decisions might be made on highly subjective grounds or even on grounds not directly related to the employe's competence:

"* * * In deciding whether to rehire or grant tenure, the considerations involved go well beyond a judgment about general teaching competence. College professors are ordinarily specialists teaching particular courses. In seeking to mold a balanced department, the institution must take into account the particular contributions which each potential teacher will make to the department as a whole; for this purpose personal factors, such as the political or economic biases of the professor, may well be legitimate considerations. An attempt must also be made to evaluate the potential academic contributions of the new teacher, as well as his teaching ability. In addition, in many institutions the practice is to hire several probationary teachers

---

⑦ Whether the statement quoted from Curran v. Laird, 420 F2d 122 (DC Cir 1970), should be, as distinguished from is, the law has been debated in the law reviews. Compare Berger, *Administrative Arbitrariness: A Synthesis,* 78 Yale L J 965 (1969) (all administrative decisions should be reviewable for arbitrariness) with Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion,"* 82 Harv L Rev 367 (1968) (contra).

in contemplation of filling one tenured position. A decision not to rehire thus does not involve issues of 'proof' of the teacher's unsuitability; it involves rather a complex comparative and evaluative process. Although dismissal during the term of the contract must entitle the probationary teacher to a full hearing, to grant such a hearing to all probationary teachers who are not rehired would be both administratively too burdensome and practically useless, for the issues involved may not be suitable for adjudicatory resolution. * * *" 81 Harv L Rev 1048, 1101 (1968).

Yet if we were to entertain the claim that a probationary employe's discharge was "arbitrary," then there would have to be an examination of the reasons for the discharge and the sufficiency of those reasons. This is a familiar exercise when a tenured public employe is discharged.[8] If it is also necessary when a probationary employe is discharged, then the distinction between the two groups of public employes has been rendered largely meaningless.

■ Plaintiff's bare allegation that his discharge was arbitrary is not sufficient to state a cause of action.[9]

Affirmed.

---

[8] E.g., Board of Trustees of Los Angeles Jr. Col. v. Metzger, 8 Cal 3d 206, 104 Cal Rptr 452, 501 P2d 1172 (1972); Gray v. Macy, 358 F2d 742 (9th Cir 1966).

[9] It has been stated that:

"The courts will pass upon * * * action of an administrative agency which is tainted with fraud, bad faith, dishonesty, corruption, collusion, malice, wrongful motive, or intentional wrongdoing, whether or not a statute so provides and even as to matter which is otherwise quite free from judicial review." 2 Am Jur 2d 513-14, Administrative Law § 653. (Footnotes omitted.)

Plaintiff makes no allegations that would bring this case within such a rule. Therefore, we need not here decide whether it is or is not an accurate statement of Oregon law.