Argued October 9, affirmed November 5, petition for rehearing
denied November 29, 1973, petition for review
denied January 15, 1974

PERRIN, *Petitioner, v.* OREGON STATE
BOARD OF HIGHER EDUCATION, *Respondent.*
515 P2d 409

Edward N. Fadeley, Eugene, argued the cause and filed the brief for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Tanzer, Judges.

TANZER, J.

Petitioner seeks judicial review of an order of the State Board of Higher Education denying petitioner indefinite tenure.

Petitioner was an assistant professor in the Department of History at the University of Oregon from 1964 through 1972, with the exception of one year's absence at the University of Wisconsin. He had annual rather than indefinite tenure. On about April 30, 1971, petitioner received notice from the Dean of Faculties that the president of the university would not approve his promotion to the rank of associate professor with indefinite tenure. Then, on or about June 10, 1971, petitioner received a letter from the head of the Department of History stating that the letter of April 30 "should be regarded as a terminal notice for academic year 1971-72." Some two months later,

petitioner received a "Notice of Appointment" dated August 6, 1971, stating that respondent Board had approved his appointment for the 1971-72 academic year. The notice went on to state that the appointment was "on the basis of annual tenure only" and that it was "issued in accordance with the terms set forth in the June 10, 1971 memo \* \* \*."

Thereafter, petitioner demanded to know the reasons for the denial of tenure and termination, and also to have a hearing on the matter. The president of the university provided petitioner with a Statement of Reasons on March 9, 1972. The Board did not concede that a hearing was necessary, but granted petitioner's request due to the then unsettled state of the law. The hearing officer upheld the president's decision and, on review, respondent Board likewise upheld the president's decision.

Petitioner raises numerous assignments of error regarding the procedures utilized at his hearing, but here, as in *Papadopoulos v. Bd. of Higher Ed.*, 11 Or App 621, 511 P2d 854 (1973), and *Schlichting v. Bergstrom*, 13 Or App 562, 511 P2d 846 (1973), there is one dispositive question: Was petitioner entitled to a hearing at all? We conclude that he was not.

In *Papadopoulos* and *Schlichting*, this court dealt at length with a public employe's right to a pretermination hearing. The essence of those cases is stated succinctly in *Schlichting*, 13 Or App at 565, as follows:

> "In *Papadopoulos v. Bd. of Higher Ed.*, 11 Or App 621, 511 P2d 854 (1973), we held that whether a public employe is entitled to a pretermination hearing depends on his entitlement to continued employment, i.e., his job security; the existence and extent of a public employe's job security depend upon state law governing public employment. *See*

*also, Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972)."

In *Papadopoulos* we concluded that the state law governing the job security of a professor on annual tenure was not such as to require a pretermination hearing. Petitioner's proffered grounds for distinguishing *Papadopoulos* boil down to these: (1) *Papadopoulos* was decided under the former Administrative Procedures Act (ORS 183.010 to 183.510, which was in effect until September 9, 1971), whereas this case should be controlled by the current Administrative Procedures Act (ORS 183.310 to 183.500, effective September 9, 1971). (2) An administrative rule of respondent Board (AR 41.140) provides that:

"Annual appointment of a faculty member above the rank of instructor for a seventh consecutive year shall normally include the granting of indefinite tenure unless the seventh annual notice of appointment specifically provides otherwise."

Petitioner contends that this provision gave him more of an expectancy of continued employment than was enjoyed by Professor Papadopoulos.

■ As to the first contention, petitioner was notified that he had not been approved for promotion to a tenured position by the letter of April 30, 1971, and he was notified of his impending termination by the letter of June 10, 1971. The Notice of Appointment resolving any possible doubts as to petitioner's status was dated August 6, 1971. Thus it appears that here, as in *Papadopoulos,* all acts complained of had occurred and the rights of the parties had been established well before the effective date of the current Administrative Procedures Act, and we therefore conclude that the

former Administrative Procedures Act governs this case.[①]

■ The short answer to petitioner's second proffered basis for distinguishing *Papadopoulos* is (1) that AR 41.140 provides that a seventh consecutive annual appointment normally carries with it tenure "unless the * * * appointment specifically provides otherwise," and (2) that the Notice of Appointment given to petitioner specifically provided otherwise. That being so, petitioner cannot be said to have had anything more than a hope that he would receive tenure. That hope is not a property right and the frustration of such a hope does not trigger the right to a hearing under *Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972), *Papadopoulos* or *Schlichting.*

■ *Papadopoulos* compels the conclusion that petitioner herein was not entitled to a contested case hearing on the denial of tenure and nonrenewal of his contract. Therefore, we need not address the array of procedural issues which petitioner has raised in connection with the hearing which was unnecessarily given him.

■ One further point raised by petitioner merits discussion. Petitioner challenges the adequacy of the notice given him on three bases: (1) it was not given by the authorized person, i.e., the president; (2) it was not timely; and (3) it was equivocal.

With regard to the first basis of the challenge, we note that the April 30, 1971 letter from the Dean of Faculties to petitioner stated that "President Clark

---

① While it is doubtful that there would be a different result under the "new" Administrative Procedures Act, we need not decide that question.

has asked me to advise you" that the president had not approved promotion for petitioner. A carbon copy of this letter was sent to President Clark. Thus, the Dean of Faculties gave notice of the act of the president. In the later letter of June 10, 1971, the head of petitioner's department states that the Dean of Faculties had stated that the letter of April 30, 1971 "should be regarded as a terminal notice for academic year 1971-72." A carbon copy of this letter was sent to the Dean of Faculties. Finally, the Statement of Reasons provided to petitioner by President Clark clearly shows that the nonrenewal decision was made by President Clark personally.

There is no problem here, as there was in *Papadopoulos,* of construing the recommendation of a subordinate as a definitive decision by one entitled to make the decision. The termination process was carried out under the direction of the president of the university, and mechanical functions were delegated. Davis, Administrative Law Text 218 (3d ed 1972).

Petitioner's contention that the notice was untimely does not survive scrutiny. Petitioner's 1971-72 contract was to run out on June 15, 1972. One year's notice of nonrenewal is required. The April 30, 1971 letter from the Dean of Faculties saying that the president did not approve tenure, and the letter from the department head saying that the April 30 letter should be regarded as a terminal notice are sufficient to put petitioner on notice that his contract would not be renewed. Since the letter from the department head came on June 10, 1971, notice was timely.

Finally, the notice was not ambiguous. It was, perhaps, tactful and reflected a sense of professional decorum on the part of the authors of the letters, but it

is impossible to believe that a reasonable person could have construed the various pieces of correspondence to be anything other than notices of nonpromotion and nonretention.

Affirmed.