220 F.3d 1165 (9th Cir. 2000)
 KEVIN MICHAEL MATTHEWS, Plaintiff-Appellant,
v.
OREGON STATE BOARD OF HIGHER EDUCATION, acting by and through University of Oregon; DAVID FROHNMAYER; JOHN MOSELEY; LORRAINEDAVIS, in their official and individual capacities, Defendants-Appellees.
 No. 98-36218
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Filed August 14, 2000
 D.C. No. CV 98-06119-MRH
 Before: Alfred T. Goodwin, Susan P. Graber, and William A. Fletcher, Circuit Judges.
 
 ORDER
 
 1
 Kevin Matthews appeals from the grant of summary judgment in favor of several named defendants and the Oregon State Board of Higher Education (the "Board"), acting by and through the University of Oregon (the "University") (collectively, the "defendants"). Matthews contends that the University did not follow proper procedures in its denial of Matthews's bid for indefinite tenure, because the provost, rather than the president, made the final determination to deny tenure. The district court concluded that the provost held the power to make this determination by way of an informal delegation by the president.
 
 
 2
 Matthews contends on appeal that such power could not validly be delegated informally. Because that contention raises an important and unresolved issue of Oregon law, we respectfully CERTIFY A QUESTION for review by the Supreme Court of Oregon. We offer the following statement of the relevant facts and explanation of the "nature of the controversy in which the question[ ] arose. " Or. Rev. Stat. S 28.210 (1999).
 
 BACKGROUND
 A. Factual and Procedural History
 
 3
 In 1991, Kevin Matthews became an "annual tenure " professor in the University's architecture department. In 1996, his sixth consecutive year in that position, Matthews applied to the University for a promotion to indefinite tenure. According to his complaint, Matthews previously had publicly criticized University officials for allegedly misusing and misallocating University money, and Matthews allegedly had been reprimanded for his accusations.
 
 
 4
 In April 1997, in apparent recognition of the controversy surrounding Matthews's tenure bid, two professors wrote to University President David Frohnmayer to support Matthews's application and to request a meeting. Frohnmayer refused the meeting, writing that for him to "interject [himself] at this point would not be appropriate. " He thus left the tenure determination to Provost John Moseley. By letter in June 1997, Provost Moseley, followed by Vice Provost Lorraine Davis, informed Matthews of Moseley's final decision to deny indefinite tenure.
 
 
 5
 Subsequently, Matthews brought an action in the Circuit Court of the State of Oregon (Lane County) and alleged that the president's failure to make the final tenure decision gave rise to claims for deprivation of due process pursuant to 42 U.S.C. S 1983 and for breach of contract under Oregon law. The defendants successfully removed to federal district court, which dismissed the case. The district court held that the president's chief executive authority permits an informal delegation to the provost of the power to make final decisions regarding indefinite tenure. We heard argument and determined that the presence or absence of authority to make such a delegation informally presents an important and unresolved state law issue that is determinative of the cause. Thus, we certify a question to the Oregon Supreme Court.
 
 
 6
 B. Oregon's Statutory and Regulatory Scheme Regarding Tenure Decisions
 
 
 7
 The Oregon Legislative Assembly has by statute delegated to the Board the authority to employ professors and prescribe their tenure. See Or. Rev. Stat. S 351.070(3)(a) (1999). In full, that provision states the following:
 
 
 8
 The board may, for each institution under its control[, a]ppoint and employ a president and the requisite number of professors, teachers and employees, and prescribe their compensation and tenure of office or employment.
 
 
 9
 Id.
 
 
 10
 The legislature also has provided that, as a general matter, the president is the chief executive officer of the university with the authority to control its daily operations, subject to enactments of the legislature and the supervision of the Board. See Or. Rev. Stat. S 352.004 (1999). That provision states:
 
 
 11
 The president of each university and college is also president of the faculty. The president is also the executive and governing officer of the school, except as otherwise provided by statute. Subject to the supervision of the board, the president of the university has authority to control and give general directions to the practical affairs of the school.
 
 
 12
 Id.
 
 
 13
 The Board, by regulation, has delegated to each university president the authority to determine faculty tenure. The Board's regulations state that "[i]ndefinite tenure shall be awarded to faculty . . . by the president," Or. Admin. R. 580021-0105(5) (1999), and elsewhere that "[i]ndefinite tenure appointments . . . are made by the president," Or. Admin. R. 580-021-0100(1)(b)(B) (1999).
 
 
 14
 C. Tenure Review at the University of Oregon
 
 
 15
 Notwithstanding the regulations vesting the "president" with the authority to make tenure determinations, id., according to the University's pattern of practice and its internal documents, the "final decision" to grant or deny indefinite tenure "rests with the provost." Appellant's Excerpts of Record at 39 (98-36218) (University of Oregon, Office of Academic Affairs, Faculty Handbook at 81 (10th ed. 1996)). Tenure review begins at the department level, where tenured faculty vote by secret ballot and where an elected personnel committee makes a recommendation to the department head. The department head then makes an independent recommendation to the dean of the school or college of which the department is a part, and that dean makes a recommendation to the provost. The provost then makes his independent and final determination. According to the University's internal documents, the provost is "the only officer in the university . . . who may award tenure." Id.
 
 
 16
 The defendants do not explain how the delegation of authority from the president to the provost came about, and there is no administrative regulation that specifically sanctions or explains that delegation. The record, however, shows that the provost has had this authority since before Frohnmayer became University President. The defendants admit that they "do not contend that the Provost derives his authority from the Faculty Handbook," which is merely an informal, internal document. Appellant's Excerpts of Record at 35 (9836218) (Georges Letter). Instead, the defendants rely on an affidavit of President Frohnmayer, which states that he made the delegation, and on their interpretation that the president's power to "control" the "practical affairs of the school," Or. Rev. Stat. S 352.004, includes the power to make such a delegation.
 
 DISCUSSION
 A. Due Process
 
 17
 Matthews contends that the failure of the president to make the finaltenure determination violated Matthews's employment contract and his right to due process under the Fourteenth Amendment. The Fourteenth Amendment protects against the deprivation of property or liberty without due process. See Carey v. Piphus, 435 U.S. 247, 259 (1978); Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir. 1988). An employee has a constitutionally protected property interest in continued employment if he has a "reasonable expectation or a `legitimate claim of entitlement' to it." Brady, 859 F.2d at 1547-48 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). A legitimate claim of entitlement arises if it is created by existing rules or understandings that stem from an independent source, such as state law. See id. at 1548.
 
 
 18
 Current Oregon regulations require that annual tenured professors with three or more years of employment be given at least twelve months' written notice of nonrenewal. See Or. Admin. R. 580-021-0305 (1999). The district court acknowledged that, under Oregon law, an annual tenured professor such as Matthews has a property interest in employment if he has not received proper notice of termination. See Papadopoulos v. Oregon State Bd. of Higher Educ., 14 Or. App. 130, 170, rev. denied (1973), cert. denied, 417 U.S. 919 (1974). To be valid under Oregon law, notice must be given after the determination regarding tenure has been made by "somebody with authority to make the decision to terminate." See id. at 172.
 
 
 19
 Papadopoulos, a mathematics professor seeking indefinite tenure at Oregon State University ("OSU"), received a letter from the Dean of the School of Science stating the Dean's decision to oppose the professor's tenure bid. See id. at 139. OSU contended that this letter expressed OSU's final decision and constituted sufficient notice of the employment decision. See id. at 139, 175. The Oregon Court of Appeals disagreed. Because the court saw "no basis for concluding " that any power to make final tenure determinations existed "below the University President level," the court held that Papadopoulos had suffered improper discharge, had stated a due process claim, and was entitled to a pretermination hearing. Id. at 170. Oregon courts have since cited Papadopoulos with approval. See, e.g., Tupper v. Fairview Hosp. , 276 Or. 657, 662 (1976) (citing Papadopoulos and holding that a hospital employee had a constitutionally significant property interest in continued employment); Perrin v. Oregon State Bd. of Higher Educ., 15 Or. App. 268, 269-73 (1973) (holding that the "mechanical function[ ]" of communicating the decision could be informally delegated to a subordinate where, as advised by Papadopoulos, the tenure decision was in fact made by the president).
 
 
 20
 We do not certify the question that Papadopoulos answered, i.e., whether invalid notice creates a constitutionally cognizable property interest in employment for a tenuretrack professor. See Or. Rev. Stat. S 28.200 (1999) (providing that decisions of the intermediate appellate court are controlling for purposes of certification of questions of Oregon law). Under Papadopoulos, Matthews has stated a claim for relief if the notice that he received was invalid, i.e., if that notice was issued without a tenure determination having been made by an official with the necessary authority. However, neither Papadopoulos nor any other reported opinion addresses the issue of delegation presented here. Whereas in Papadopoulos there was "no basis" for the dean's authority to make the final tenure determination, in Matthews's case the University offers a basis--the informal delegation to the provost. The question here is whether that proffered basis was valid. That is, the question here is whether or not the president's informal delegation vested the provost with the authority to make the final tenure determination. The current stateof the law in Oregon does not answer that question[1].
 
 B. Delegation
 
 21
 Matthews argues that, to be effective, the president's delegation of his tenure powers requires formal rulemaking under Oregon's Administrative Procedures Act ("APA"). Oregon law defines an agency "rule," which requires rulemaking in accordance with Or. Admin. R. 571-001-0000, as "[a]ny agency directive, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency." Or. Rev. Stat. 183.310(8) (1999); Or. Admin. R. 571-001-0000(2) (1999). Matthews argues that the president's delegation of tenure power qualifies as a "rule " requiring APA rulemaking. Matthews cites several examples in which powers of the president were in fact delegated by way of rulemaking. See, e.g., Or. Admin. R. 571-011-0015(5) (1999) ("The Director of the [EMU] is delegated by the . . . President full authority for the supervision, management, and operation of the EMU . . . ."); 571-011-0010(4) (authorizing formal delegation from president); 571-022-0080 (same); 571-050-0005 (same).
 
 
 22
 Matthews also cites for support the provisions of the tenure regulations themselves, which provide that "[i]ndefinite tenure decisions shall be awarded to faculty . . . by the president," Or. Admin. R. 580-021-0105(5), and that "[i]ndefinite tenure appointments are made by the president ," Or. Admin. R. 580-021-0100(1)(b)(B). (Emphases added). Matthews contrasts these regulations, which name the "president," with other provisions within the same body of regulations granting other powers to the "President or a designee ." E.g., Or. Admin. R. 580-021-0105 (1999) (setting forth that the "President or a designee" may agree to certain terms and conditions of employment); 580-021-0050(7) (granting powers to the "president" or "designee"); 580-021-0105(4) (same); 581021-0110(6) (same). (Emphasis added). Matthews argues that this dichotomy suggests that, when the Board intended to grant the unilateral power of delegation to the president, it knew how to do so.
 
 
 23
 On the other hand, the defendants argue that the power to delegate tenure responsibility without rulemaking is within the president's chief executive powers to exercise "control" over "the practical affairs" of the University. Or. Rev. Stat. S 352.004. The defendants argue that the delegation constituted a mere internal management directive ("IMD"), as such was "excluded from the definition of a rule," Or. Admin. R. 571-001-0000(2), and thereby was sufficiently performed informally without rulemaking. See generally Rogue Fly Fishers, Inc. v. Water Policy Review Bd., 62 Or. App. 412, 417 (1983) (describing the characteristics of IMDs). Oregon law has not addressed the question whether the delegation at issue suffices under the statutory provisions or the question whether that delegation constitutes an internal management directive free from APA rulemaking requirements.
 
 
 24
 We do not think that it is appropriate to substitute our judgment for the judgment of the Oregon Supreme Court on the interpretation of Oregon's statutory and regulatory scheme for state universities. The issue at bar is one at the crossroads of Oregon law and Oregon policy, and its resolution will significantly impact the development of Oregon's administrative law and the procedures of Oregon's public universities. Accordingly, we believe that Oregon's highest court is the most appropriate forum to address the issue.
 
 CONCLUSION
 
 25
 We certify the following question to the Oregon Supreme Court:
 
 
 26
 Whether under Oregon law the President of the University of Oregon may, without explicit statutory or regulatory authorization, delegate informally the authority to make final determinations regarding the denial of indefinite tenure.
 
 
 27
 We respectfully request the Oregon Supreme Court to exercise its discretionary authority under Oregon's Uniform Certification of Questions of Law Act, Or. Rev. Stat.SS 28.200 to .255 (1999), to accept and decide this question."The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." Toner v. Lederle Lab., 779 F.2d 1429, 1433 (9th Cir. 1986) (citation omitted). If the Oregon Supreme Court decides that the question presented in this case is inappropriate for certification, or if it declines the certification for any other reason, it should state so and we will resolve the question according to our understanding of Oregon law.
 
 
 28
 The Clerk will file a certified copy of our Order with the Oregon Supreme Court under Or. Rev. Stat. S 28.215 (1999). This appeal is withdrawn from submission and will be submitted following receipt of the Oregon Supreme Court's Opinion on the question certified. This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk within one week after the Oregon Supreme Court accepts or rejects certification, and again within one week after the court renders its opinion.
 
 
 29
 IT IS SO ORDERED.
 
 
 
 Notes:
 
 
 [1]
 Our court likewise has not addressed the issue. In Seitz v. Clark, 524 F.2d 876 (9th Cir. 1975), we rejected the claim of a nontenured visiting professor, but we did not address the propriety of informally delegating tenure decisions. Moreover, because the plaintiff was a visiting professor with a presumptive expectation of but a single year, we determined it "unnecessary to decide whether any notice was required. " Id. at 883.